PAUL J. KEIFE, APPELLANT, *v.* NOLAN WINSTON LOGAN, ELAINE M. LOGAN, AND LOGAN FAMILY TRUST DATED SEPTEMBER 4, 1990, RESPONDENTS.

No. 38029

August 28, 2003                                                      75 P.3d 357

*Douglas K. Fermoile,* Reno, for Appellant.

*Linda A. Bowman,* Reno, for Respondents.

Before ROSE, MAUPIN and GIBBONS, JJ.

## OPINION

*Per Curiam:*

This case involves the issue of whether, after a railroad company abandons a right-of-way, the adjacent landowner or the underlying landowner is entitled to the reversionary interest in the right-of-way. We hold that the reversionary interest in the right-of-way

vests in the landowner who establishes title to the land underlying the right-of-way.

## FACTS

In 1971, Paul J. Keife purchased real property located in Wadsworth, Nevada. Keife's property is adjacent to the disputed property, the railroad right-of-way.

In 1989, Nolan Logan purchased twenty-seven acres of land, which included the right-of-way, from Southern Pacific Transportation Company (Southern Pacific). Shortly thereafter, Logan quitclaimed the property to the Logan Family Trust.

On November 16, 1998, Keife filed a complaint against the respondents seeking to quiet title to the right-of-way, a declaratory judgment that Keife is the rightful owner of the right-of-way, and ejection of the respondents from the right-of-way. Following a one-day bench trial, the district court entered a written decision in favor of the respondents.

The district court made the following findings of fact. Under the Congressional Acts of July 1, 1862,[1] as amended by the Act of July 2, 1864,[2] the United States granted several lands, including the right-of-way, to the Central Pacific Railroad Company (Central Pacific). The right-of-way "consists of 5.7 acres of land, which is a 400-foot wide strip of land including approximately 3000 feet of railroad trackage," and "[t]he tracks were originally part of Central Pacific's mainline."

The chain of title to Keife's property, which is adjacent to the right-of-way, was traced back to the original United States patent that granted the lands to Central Pacific. Keife admitted that he did not own the land underlying the railroad right-of-way. Logan purchased the right-of-way and the underlying land from Southern Pacific, Central Pacific's successor in interest.

The district court found that the right-of-way was conveyed as "a limited fee with the right of reverter." The district court also found that Southern Pacific's physical nonuse and removal of the tracks on the right-of-way, its clear intention to dispose of the right-of-way, and its negotiations to sell the right-of-way established that Southern Pacific ceased using and occupying the right-of-way. As such, the district court declared that Southern Pacific had abandoned the right-of-way by 1987.

Because the district court declared that Southern Pacific abandoned the right-of-way, it was required to determine who was entitled to the reversionary interest in the right-of-way pursuant to 43 U.S.C. § 912 (1994), which governs the disposition of abandoned

---

[1]Act of July 1, 1862, ch. 120, 12 Stat. 489.

[2]Act of July 2, 1864, ch. 220, 13 Stat. 373.

railroad grants. The district court rejected Keife's argument that the right-of-way reverted to him as the adjacent landowner. Therefore, the district court concluded that, pursuant to § 912, Logan acquired title to the right-of-way through Southern Pacific's purported conveyance to him of the entire subdivision, consisting of the right-of-way and the underlying land.

## DISCUSSION

Keife contends that the district court misapplied § 912. According to Keife, upon Southern Pacific's abandonment of the right-of-way in 1987, the reversionary interest in the right-of-way vested in Keife as the adjacent landowner. Keife also contends that the district court's finding that Southern Pacific purported to convey "the entire subdivision" is erroneous.

On appeal, this court will not disturb a district court's findings of fact if they are supported by substantial evidence.[3] However, the district court's conclusions of law are reviewed de novo.[4]

43 U.S.C. § 912 provides in pertinent part:

> Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and *use and occupancy of said lands for such purposes has ceased* or shall hereafter cease, whether by forfeiture or *by abandonment by said railroad company* declared or decreed by a court of competent jurisdiction or by Act of Congress, *then and thereupon all right, title, interest, and estate of the United States in said lands shall,* except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment *be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad* or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality, and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever . . . .[5]

---

[3]*See Gepford v. Gepford,* 116 Nev. 1033, 1036, 13 P.3d 47, 49 (2000).

[4]*See Birth Mother v. Adoptive Parents,* 118 Nev. 972, 974, 59 P.3d 1233, 1235 (2002), *cert. denied,* 538 U.S. 965 (2003).

[5]Emphasis added.

The Ninth Circuit has noted that the United States Congress enacted § 912 to ensure that railroad rights-of-way would continue to be used for transportation purposes.[6]

Many courts have provided that before 1871, the right-of-way that the railroads received was a limited fee with the right of reverter, but after 1871, it was an exclusive-use easement because in 1871 Congress discontinued conveying the land outright.[7] Notwithstanding, § 912 "applies regardless of whether the railroad has a limited fee with right of reverter or an exclusive easement."[8] Here, the district court concluded that Southern Pacific's right-of-way was a limited fee with the right of reverter because its predecessor in interest, Central Pacific, received the right-of-way before 1871.

In rejecting Keife's argument that the right-of-way reverted to him as the adjacent landowner, the district court relied exclusively on *Marlow v. Malone.*[9] In *Marlow,* the same issue was presented to the Appellate Court of Illinois as in the present case—whether the district court misinterpreted § 912 by denying the appellants the abandoned railroad right-of-way as adjacent landowners. Likewise, the facts of *Marlow* are similar to the instant case.[10] In 1850, the United States granted the State of Illinois a 200-foot-wide right-of-way and various sections of land on each side of the right-of-way. Thereafter, Illinois deeded the land to the Illinois Central Railroad Company (ICR). In 1967, appellants acquired the land lying west of the right-of-way. In 1986, the Interstate Commerce Commission issued a certificate of abandonment, and ICR ceased its use and occupancy of the right-of-way. ICR then quitclaimed all its right, title and interest in the right-of-way to the respondent.

The Appellate Court of Illinois concluded that, based on the plain language of § 912, appellants' argument that the right-of-way vested in them merely by virtue of their adjacency to the right-of-way lacked merit.[11] The court stated that title is imperative to a claim for the reversionary interest in a right-of-way because § 912 "passes title to abandoned rights-of-way to persons, entities, or their successors in title who have received paper title or can establish title to the land underlying the right-of-way, independent from the operation of section 912."[12] The court acknowledged that other jurisdictions agree that a person claiming the reversionary interest under § 912 must establish that they have title to the land un-

---

[6]*Vieux v. East Bay Regional Park Dist.,* 906 F.2d 1330, 1335 (9th Cir. 1990).

[7]*See City of Maroa v. Illinois Cent. R.R.,* 592 N.E.2d 660, 664 (Ill. App. Ct. 1992) (cases cited therein).

[8]*Id.*

[9]734 N.E.2d 195 (Ill. App. Ct. 2000).

[10]*Id.* at 199.

[11]*Id.* at 200.

[12]*Id.* at 201.

derlying the right-of-way.[13] The court further acknowledged that the legislative history of § 912 supported its interpretation because proponents of § 912 "stated that '[t]he only person who would get [the right-of-way] is some one [sic] who has received the [underlying] property . . . subject to right-of-way [sic] of the easement of the railroad company.' "[14] And "[t]he proponents further explained that '[t]he person who gets [the right-of-way] is the person to whom the title . . . may have been or may be granted.' "[15]

Accordingly, the Appellate Court of Illinois held that under § 912, "a plaintiff must establish title to the land underlying the right-of-way," and "[t]he plaintiff need only establish this title by showing a chain of title leading back to the United States."[16] The court explained that "title is sufficient if based upon a railroad company's purported fee conveyance of the entire subdivision, including the land underlying the right-of-way, which the railroad company originally received as part of a United States railroad grant."[17]

Applying its reasoning to the appellants' claim, the Appellate Court of Illinois concluded that the appellants failed to establish title to the land underlying the right-of-way.[18] The court noted that the appellants' deed specifically excluded the land underlying the right-of-way.[19] The court concluded that ICR's purported conveyance of the right-of-way, including the land underlying the right-of-way, was sufficient to vest the reversionary interest in the right-of-way in the respondent.[20]

Here, Keife argues that *Marlow* is inapposite because the appellants in *Marlow* could not trace their title in the land underlying the right-of-way to a United States patent, whereas Keife traced his land, which is adjacent to the right-of-way, to the original United States patent that granted the land to Central Pacific. However, Keife's argument is unavailing because he specifically admitted at trial that he did not own the land underlying the right-of-way.

Alternatively, Keife urges us to adopt the *Marlow* dissent's interpretation of § 912 because the dissent's interpretation supports his position that an abandoned railroad right-of-way reverts to the

---

[13]*Id.* (citing *City of Buckley v. Burlington Northern,* 723 P.2d 434, 437 (Wash. 1986); *City of Aberdeen v. Chicago & North Transp.,* 602 F. Supp. 589, 592 (D.S.D. 1984)).

[14]*Id.* (alterations in original) (quoting 59 Cong. Rec. 6474 (1920)).

[15]*Id.* (alterations in original) (quoting 59 Cong. Rec. 6474 (1920)).

[16]*Id.* at 202.

[17]*Id.*

[18]*Id.* at 205.

[19]*Id.* at 203.

[20]*Id.*

adjacent landowner. We decline Keife's suggestion. Because the plain language and legislative history of § 912 support the majority's interpretation, we adopt it. Thus, we hold that upon abandonment by the railroad, the right-of-way reverts to the underlying landowner.

Notably, as the majority in *Marlow* noted, other jurisdictions are in accord with this interpretation of § 912. For instance, in *City of Buckley v. Burlington Northern,*[21] the Supreme Court of Washington similarly interpreted § 912: "If a person, firm or corporation has title to the underlying fee, the reversion vests automatically, unless the right-of-way runs through a municipality." Moreover, in *Scott v. Union Pacific Railroad Co.,*[22] we stated: "Upon effective abandonment, the right-of-way or easement reverted to the underlying fee owner . . . ." Although *Scott* did not address the issue presented in the instant case,[23] our statement of law regarding the ownership of the underlying fee is in harmony with our interpretation of § 912.

Keife contends that the Ninth Circuit's interpretation of § 912 in *Vieux v. East Bay Regional Park District*[24] supports his argument that the right-of-way reverted to him as the adjacent landowner. We disagree. In its decision, the district court acknowledged Keife's reliance on *Vieux,* but noted that the Ninth Circuit did not explain the landowners' rights, if any, to the land underlying the right-of-way. Indeed, the landowners' rights to the reversionary interest in the right-of-way were not at issue in *Vieux.*[25]

Finally, Keife argues that the record shows that Southern Pacific only conveyed the right-of-way, not any land adjacent to the right-of-way, to Logan, and thus, Southern Pacific did not purport to convey "the entire subdivision," as the district court found. We conclude that Keife's argument lacks merit because it is based on his erroneous interpretation of § 912. Thus, we conclude that the district court's finding that Southern Pacific purported to convey the right-of-way and the land underlying the right-of-way to Logan is supported by substantial evidence.

[21]723 P.2d at 437.

[22]109 Nev. 729, 732, 857 P.2d 10, 13 (1993).

[23]In that case, Scott filed an action alleging that Union Pacific, the State of Nevada, or Lincoln County owned the railroad right-of-way, which had been abandoned by Union Pacific, and that the defendants breached the duty to maintain the right-of-way in a reasonably safe condition because Scott was injured when he rode his motorcycle on the right-of-way. *Id.* at 731, 857 P.2d at 12.

[24]906 F.2d 1330 (9th Cir. 1990).

[25]*See id.* at 1341-42 (concluding that the landowners lost their non-vested reversionary rights pursuant to the public-highway exception under § 912, without addressing whether the landowners were adjacent or underlying landowners).

## CONCLUSION

We hold that when a railroad company abandons a right-of-way, the reversionary interest in the right-of-way vests in the underlying landowner. Because the district court's finding that the right-of-way reverted to Logan, as the underlying landowner, is supported by substantial evidence, we affirm the district court's judgment.