PATRICIA FIERLE AND DANIEL FIERLE, HUSBAND AND WIFE, APPELLANTS, *v.* JORGE PEREZ M.D., LTD., A NEVADA PROFESSIONAL CORPORATION, DBA SIERRA NEVADA ONCOLOGY CARE; JORGE PEREZ, M.D., PH.D, MRCP, MRCPATH, AN INDIVIDUAL; LINDA LESPERANCE, R.N., APN-C, AN INDIVIDUAL; CHARMAINE CRUET, R.N., APN-C, AN INDIVIDUAL; AND MELISSA MITCHELL, R.N., AN INDIVIDUAL, RESPONDENTS.

No. 49602

November 19, 2009                                    219 P.3d 906

[Rehearing denied January 19, 2010]

PICKERING, J., dissented in part.

*Sullivan Law Offices* and *Gene M. Kaufmann, J.D. Sullivan,* and *Milos Terzich,* Minden, for Appellants.

*Lauria, Tokunaga, Gates & Linn, LLP,* and *Anthony D. Lauria* and *Robert B. Smith,* Sacramento, California, for Respondents Lesperance and Cruet.

*Lemons, Grundy & Eisenberg* and *Alice Campos Mercado* and *Edward J. Lemons,* Reno, for Respondents Perez and Mitchell.

# OPINION

By the Court, CHERRY, J.:

Appellants Patricia Fierle and her husband, Daniel Fierle, filed a complaint against Dr. Jorge Perez, members of his staff, and his professional medical corporation. The complaint stemmed from an incident where Patricia suffered severe burns from chemotherapy treatment that Dr. Perez's staff administered. After initially failing to attach an expert affidavit to the complaint, the Fierles then filed a first amended complaint with an attached medical expert's affidavit. On respondents' motion, the district court dismissed the complaint in full and struck the first amended complaint. The Fierles then filed a motion for relief pursuant to NRCP 52(b), 59(e), and 60(b), which was denied. The Fierles now appeal.

This appeal involves mainly issues of first impression regarding the applicability of NRS 41A.071 to professional medical corporations in medical malpractice actions and nurses and nurse practitioners in professional negligence actions; and whether medical malpractice and professional negligence claims made in the complaint that are void ab initio because no expert affidavit is attached may be cured by the amendment of the complaint regardless of whether other claims in the original complaint survive.

We conclude that an expert affidavit is required for medical malpractice actions against professional medical corporations and professional negligence actions against nurses and nurse practitioners under NRS 41A.071, and therefore, we conclude that the district court did not err in dismissing the Fierles' complaint with regard to such claims. Additionally, we conclude that the district court erred in dismissing the negligent extravasation claim against one member of Dr. Perez's staff because that claim falls under the res ipsa loquitur statutory exception to NRS 41A.071 and, therefore, is not required to be supported by an expert medical affidavit. We further conclude that medical malpractice and professional negligence claims made in a complaint that become void ab initio for lack of the attachment of an expert affidavit may not be cured by the amendment of that complaint, regardless of whether other claims in the original complaint survive.

## FACTS

In July 2005, Patricia was diagnosed with breast cancer. She then underwent a mastectomy. In addition to the mastectomy, a catheter was also surgically placed in Patricia's chest wall for the infusion of chemotherapy medications. In this procedure, the catheter is surgi-

cally attached to the tissue under the skin, and a second part of the catheter is placed into the subclavian vein. Once surgically inserted, the catheter can be accessed via needle to inject chemotherapy medications into the patient's subclavian vein.

Patricia then became a patient of Dr. Perez and his employees, registered nurse Melissa Mitchell and nurse practitioners Charmaine Cruet and Linda Lesperance, for the administration of her chemotherapy. The Fierles allege that on Patricia's third visit to Dr. Perez's office, Mitchell's administration of the chemotherapy medications did not infuse into the catheter but instead infused into her tissue, causing a subcutaneous burn called an "extravasation." Patricia alleges that she complained of pain but respondents failed to give her medical attention. A day later, on September 16, 2005, Patricia was referred to a radiologist after a nurse in Dr. Perez's office noted redness and swelling of Patricia's chest. An ultrasound revealed that the catheter tip was not in the subclavian vein but had coiled in the tissues.

Within two weeks of the alleged extravasation, Patricia sought treatment from another doctor. That doctor in turn referred her to yet another doctor, Dr. Miercort, for further treatment. In Dr. Miercort's January 17, 2007, affidavit attached to appellants' amended complaint, Dr. Miercort opined that when he began treating Patricia, he believed that "negligent extravasation" had occurred. Dr. Miercort referred Patricia to U.C. Davis Medical Center, where Patricia was diagnosed with "a severe extravasation of chemotherapy over the right shoulder and subclavian region."

The Fierles filed a complaint in district court on September 14, 2006, alleging, among other claims, medical malpractice stemming from chemotherapy treatment for Patricia's breast cancer. In their first claim, the Fierles alleged that Mitchell failed to use due care in the administration of the chemotherapy and that negligence caused Patricia to be burned with epirubicin.[1] Additionally, the Fierles alleged that Dr. Perez, Lesperance, and Cruet were negligent in the training and supervision of Mitchell. In their second claim, the Fierles alleged loss of consortium relating to Daniel's loss as a result of Patricia's injuries.[2] In their third and final claim, the Fier-

---

[1]In the complaint, the Fierles described epirubicin as "a vesicant, i.e., a tissue blistering agent."

[2]Regarding loss of consortium claims, in *Turner v. Mandalay Sports Entm't*, we determined that a spouse's claim for loss of consortium is derivative, and thus, its success is dependent on the other spouse having a valid cause of action against the defendant. 124 Nev. 213, 222 n.31, 180 P.3d 1172, 1178 n.31 (2008) (citing *Gunlock v. New Frontier Hotel*, 78 Nev. 182, 185 n.1, 370 P.2d 682, 684 n.1 (1962)). Thus, we conclude that because of the derivative nature of the claims, only the loss of consortium claims that arise from the surviving res ipsa loquitur claims endure on remand.

les alleged "Willful Failure to Provide Treatment and Constructive Fraud" against Dr. Perez and Jorge Perez M.D., Ltd. Subsequently, upon realizing that an expert affidavit may be required, the Fierles filed an amended complaint with an affidavit from Dr. Miercort attached.

Jorge Perez M.D., Ltd., Dr. Perez, and Mitchell (collectively, Perez respondents) moved to dismiss the Fierles' complaint. The Perez respondents' motion to dismiss relied on the fact that the Fierles failed to file the original complaint with an accompanying expert affidavit, as required under NRS 41A.071. Further, the Perez respondents moved to strike the amended complaint based upon our decision in *Washoe Medical Center v. District Court*, 122 Nev. 1298, 1300, 148 P.3d 790, 792 (2006) (holding that complaints filed under NRS 41A.071 without an affidavit from a medical expert are void ab initio and must be dismissed). Cruet and Lesperance joined in the motion to dismiss and motion to strike the first amended complaint.

The district court granted the motion to dismiss and the motion to strike and found that the Fierles' allegations did not fall under NRS 41A.100(1)(c), Nevada's codification of the res ipsa loquitur doctrine, because the allegations "are not matters of common knowledge to a layperson, but instead must be established by a medical expert." As such, the district court dismissed the Fierles' complaint and struck the amended complaint under NRS 41A.071 because the original complaint was filed without a supporting expert medical affidavit.

Thereafter, the Fierles filed a motion to alter or amend the findings of fact, conclusions of law, and judgment, pursuant to NRCP 52(b) and 59(e), and for relief from judgment, pursuant to NRCP 60(b). The motion purported to reveal newly discovered evidence that Dr. Perez concealed and withheld medical records. In support of this motion, the Fierles attached two affidavits: a second one from Dr. Miercort and one from registered nurse Rhonda Uhart, an employee of the oncologist who took over Patricia's treatment following her injury at Dr. Perez's office. Uhart and Dr. Miercort attested that Dr. Perez's office withheld records when requested by their respective offices. The district court denied the motion.[3] This appeal follows.

---

[3]We previously issued an order in this case concluding that the portion of the district court's order denying respondents' NRCP 60(b) motion is substantively appealable as a special order after judgment. *See* NRAP 3A(b). The order also concluded that the portion of the district court's order denying respondents' motion pursuant to NRCP 52(b) and 59(e) was not appealable because we lack jurisdiction over orders denying such motions. *See Uniroyal Goodrich Tire v. Mercer*, 111 Nev. 318, 320 n.1, 890 P.2d 785, 787 n.1 (1995), *superseded by statute on other grounds as stated in RTTC Communications v. Saratoga Flier,*

## DISCUSSION

*Standard of review*

Here, the district court's dismissal of this case stemmed from its interpretation and application of statutes. This court reviews a district court's statutory construction determinations de novo. *Beazer Homes Nevada, Inc. v. Dist. Ct.*, 120 Nev. 575, 579, 97 P.3d 1132, 1135 (2004); *Keife v. Logan*, 119 Nev. 372, 374, 75 P.3d 357, 359 (2003).

*NRS 41A.071 applies to professional medical corporations*

We first consider whether NRS 41A.071 applies to professional medical corporations. We conclude that it does.

The expert affidavit provision of the medical malpractice statutes, NRS 41A.071, provides:

> If an action for medical malpractice or dental malpractice is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affiavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.

NRS 41A.009 defines medical malpractice as "the failure of a physician, hospital or employee of a hospital, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances." Appellants argue that under these statutes an affidavit from a medical expert is not required in suits against a professional medical corporation.

While we acknowledge that the statutory definition for medical malpractice refers to a physician and not to a professional medical corporation, NRS 89.060 and 89.220 make clear that when dealing

---

121 Nev. 34, 110 P.3d 24 (2005). Regarding the NRCP 60(b) motion, we conclude that the district court did not abuse its discretion in finding that the Fierles failed to demonstrate newly discovered evidence or fraud to prevail on their motion. *See Bianchi v. Bank of America*, 124 Nev. 472, 474, 186 P.3d 890, 892 (2008) (stating that this court will not disturb the district court's decision regarding motions brought pursuant to NRCP 60(b) absent an abuse of discretion). The documents the Fierles claimed that Dr. Perez concealed and withheld were, in fact, sent to the Fierles months before the filing of the complaint and, as such, do not meet the standard to be considered newly discovered evidence under NRCP 60(b)(2). Moreover, the Fierles have failed to demonstrate any clear and convincing evidence that Dr. Perez perpetrated fraud under NRCP 60(b)(3). The Fierles contend that Dr. Perez improperly persuaded the district court to dismiss the Fierles' complaint. However, the complaint was dismissed solely for failure to attach an expert affidavit.

with a medical malpractice claim against professional entities and professional associations, no statute alters the personal liability of a physician in those claims. NRS 89.060(1) provides that:

> The provisions of this chapter relating to professional entities do not modify any law applicable to the relationship between a person furnishing professional service and a person receiving such service, including liability arising out of such professional service, but nothing contained in this section renders:
>
> 1. A person personally liable in tort for any act in which he has not personally participated.

NRS 89.220(1) provides that:

> The provisions of this chapter relating to professional associations do not modify any law applicable to the relationship between a person furnishing professional service and a person receiving such service, including liability arising out of such professional service, but:
>
> 1. A member or employee of a professional association shall not be personally liable in tort for any act in which he has not personally participated.

These statutes expound that personal liability cannot be altered by the formation of a professional association or entity. As such, if no statute can be used to limit the liability of a professional entity or association in which the member has personally participated, we are required to conclude that the provisions of NRS Chapter 41A must be read to include professional medical corporations.

"When two statutes are clear and unambiguous but conflict with each other when applied to a specific factual situation, an ambiguity is created and we will attempt to reconcile the statutes." *Szydel v. Markman*, 121 Nev. 453, 457, 117 P.3d 200, 202-03 (2005). In doing so, we will attempt to read the statutory provisions in harmony, provided that this interpretation does not violate legislative intent. *City Council of Reno v. Reno Newspapers,* 105 Nev. 886, 892, 784 P.2d 974, 978 (1989). Additionally, we consider "the policy and spirit of the law and will seek to avoid an interpretation that leads to an absurd result." *City Plan Dev. v. State, Labor Comm'r*, 121 Nev. 419, 435, 117 P.3d 182, 192 (2005). As such, NRS Chapters 41A and 89 must be read in harmony.

The term "professional corporation" is not defined in NRS Chapter 41A, rather it is defined in Chapter 89 as a "corporation organized under this chapter to render a professional service." NRS 89.020(7). Accordingly, professional medical corporations are subject to NRS 89.060 and 89.220, such that no statute alters the personal liability of a physician in medical malpractice

claims. Therefore, we conclude that the expert affidavit requirement applies equally to both physicians and professional medical corporations.

Thus, we conclude that medical malpractice claims alleged against a professional medical corporation are subject to the affidavit requirement of NRS 41A.071.

As such, we conclude that NRS 41A.071 requires the attachment of expert affidavits for medical malpractice claims against doctors and professional medical corporations for any non-res ipsa loquitur claims brought under NRS Chapter 41A.[4] Because the Fierles failed to attach an expert affidavit to their complaint in support of their non-res ipsa loquitur medical malpractice claims against Dr. Perez and Jorge Perez M.D., Ltd., we conclude that the district court did not err in dismissing the Fierles' medical malpractice claims related to these respondents.

*NRS 41A.071 applies to professional negligence claims*

We next consider whether NRS 41A.071, which refers to "medical malpractice," applies to claims for "professional negligence." The Fierles argue that the district court erred in failing to recognize that their complaint made claims against individuals who did not fall under the medical malpractice statutory scheme of NRS Chapter 41A. Specifically, the Fierles contend that only the claims made against Dr. Perez fall under the definition of medical malpractice provided in NRS 41A.009, and that all other claims made were claims of professional negligence.

Respondents contend that the plain language of NRS 41A.071 belies the Fierles' argument because of the inclusiveness of NRS 41A.071, which respondents point out applies not only to doctors, hospitals, and hospital employees, but also includes actions for dental malpractice. Thus, respondents argue that the statute expansively includes nurses and, as such, the district court properly dismissed the Fierles' medical malpractice claims against Cruet and Lesperance because of failure to comply with the affidavit requirements of NRS 41A.071.

In 2002, through a special session of the Legislature, NRS Chapter 41A was amended concerning actions for dental or medical malpractice. That legislation added an affidavit requirement in NRS 41A.071 for claims of medical malpractice and revised the res ipsa loquitur exception in NRS 41A.100. In 2004, Nevada's voters approved an initiative petition that added protections for "professional negligence" for "provider[s] of heath care." NRS 41A.015, 41A.017. Professional negligence means "a negligent act or omis-

---

[4]We note that certain res ipsa loquitur claims are exempted from the affidavit requirement, as discussed in depth later in this opinion.

sion to act by a provider of health care'' and the definition of ''provider[s] of health care'' includes licensed nurses and hospitals. NRS 41A.015, 41A.017. However, the initiative petition did not expressly amend the definition of medical malpractice under NRS 41A.071.

Since the 2004 amendments, we have not considered whether the affidavit requirement for medical malpractice lawsuits includes claims of ''professional negligence'' allegedly committed by any ''provider of health care.'' Accordingly, this is an issue of first impression. We conclude that the ambiguity created by the differing acts should be resolved in favor of a requirement for an expert affidavit for claims of professional negligence made against providers of health care.[5]

We begin by analyzing whether the language of NRS 41A.071 encompasses professional negligence actions. NRS 41A.071 requires the filing of an expert affidavit in actions for medical malpractice or dental malpractice. However, it is not clear if medical malpractice encapsulates professional negligence. Initially, we note that the definition for professional negligence that was added in 2004 (NRS 41A.015) essentially duplicates the definition for medical malpractice contained in NRS 41A.009. As such, it is not clear whether the references to medical malpractice in NRS Chapter 41A encompass the almost identically defined professional negligence. In resolving this ambiguity regarding the definitions of professional negligence and medical malpractice, we look to the purpose and intent behind the enactment of the statutes. *See Beazer Homes Nevada, Inc. v. Dist. Ct.*, 120 Nev. 575, 580, 97 P.3d 1132, 1135 (2004).

The intent of the 2004 amendments that resulted in the definition of professional negligence was to overlay and expand the same protections that the Legislature attempted to provide for doctors in the state during the special legislative session in 2002. *See* 2004 General Election Sample Ballot, p. 12.[6] In duplicating the definition of med-

---

[5]While the Fierles' alleged medical malpractice in their complaint, some of their claims fall under the NRS 41A.015 definition of professional negligence contained within NRS Chapter 41A, titled ''Actions for Medical or Dental Malpractice.''

[6]On appeal, a court can only consider those matters that are contained in the record made by the court below and the necessary inferences that can be drawn therefrom. *Toigo v. Toigo*, 109 Nev. 350, 350, 849 P.2d 259, 259 (1993) (citing *Lindauer v. Allen*, 85 Nev. 430, 433, 456 P.2d 851, 853 (1969)). We may take judicial notice of facts generally known or capable of verification from a reliable source, whether we are requested to or not. NRS 47.150(1). Further, we may take judicial notice of facts that are ''[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, so that the fact is not subject to reasonable dispute.'' *See*

ical malpractice and expanding it to include nurses and other non-hospital employees, it is fair to assume that the people, by enacting the 2004 amendments, wanted to extend the legislative shield that protects doctors from frivolous lawsuits and keeps doctors practicing medicine in this state. It would extend that these same requirements and procedures for filing a medical malpractice claim should be the same as those for filing a professional negligence claim.

Further, to say that nurses are exempt from the NRS 41A.071 affidavit requirement would also require that physicians be exempt because claims for medical malpractice and professional negligence against physicians are identical claims, one with an affidavit requirement, and one without. As such, to not make the affidavit requirement universal would thwart the intent and goals of the Legislature, the petitioners, and the citizens of this state because it would lessen the protections that these bodies intended for Nevada's doctors. Such a reading of NRS 41A.071 runs contrary to the purpose and intent behind the enactment of the statutes.

As such, we conclude that NRS 41A.071 requires the attachment of expert affidavits for professional negligence claims against providers of health care, including nurses and nurse practitioners, as well as doctors, for any non-res ipsa loquitur claims. Because the Fierles failed to attach an expert affidavit to their complaint in support of their non-res ipsa loquitur professional negligence claims against Jorge Perez M.D., Ltd., Cruet, Lesperance, and Dr. Perez, we conclude that the district court did not err in dismissing the Fierles' professional negligence claims against these respondents.

*Claims based on res ipsa loquitur are not subject to the affidavit requirement*

While plaintiffs are required to attach an expert affidavit to complaints alleging medical malpractice and professional negligence, there is one exception for claims based on the res ipsa loquitur doctrine.[7] As such, we next consider whether the Fierles' medical mal-

---

NRS 47.130(2)(b). Moreover, courts generally may take judicial notice of legislative histories, which are public records. *See Hayes v. Continental Ins. Co.*, 872 P.2d 668, 673 n.5 (Ariz. 1994); *Nekoosa-Edwards Paper Co. v. Public Service Com'n*, 99 N.W.2d 821, 826 (Wis. 1959). As such, we are taking judicial notice of the petitioners' declared intent.

[7]NRS 41A.100(1)(c) in relevant part provides that:

1. Liability for personal injury or death is not imposed upon any provider of medical care based on alleged negligence in the performance of that care unless evidence consisting of expert medical testimony . . . is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case and to prove causation of the alleged personal injury or death, *except that such evidence is not re-*

practice and professional negligence claims survive despite their failure to attach an expert affidavit to their complaint. Primarily, we conclude that the Fierles' claim of negligent extravasation based on res ipsa loquitur survives, while those not based on res ipsa loquitur do not survive because there was no expert affidavit.[8]

In coming to the conclusion that only the res ipsa loquitur claim survives, we are persuaded by *Szydel v. Markman*, 121 Nev. 453, 117 P.3d 200 (2005). In *Szydel*, we concluded that the expert affidavit requirement of NRS 41A.071 does not apply when the malpractice action is based solely on the res ipsa loquitur doctrine. *Id.* at 454, 117 P.3d at 201. Specifically, we reconciled the res ipsa loquitur doctrine, codified in NRS 41A.100, with the expert affidavit requirements of NRS 41A.071 and concluded that "an expert affidavit in a res ipsa case under NRS 41A.100(1) is unnecessary." *Id.* at 459, 117 P.3d at 204. Therefore, medical malpractice claims based solely on the res ipsa loquitur doctrine may go forward in factual situations where negligence can be shown without expert medical testimony.[9] *Id.* at 459-60, 117 P.3d at 204. Finally, we concluded that when a plaintiff files a res ipsa loquitur claim in conjunction with other medical malpractice claims that are not based upon the res ipsa loquitur doctrine, those other claims are still subject to the expert affidavit requirements of NRS 41A.071. *Id.* at 460, 117 P.3d at 205. We thus find *Szydel* instructive to the case at bar.

We conclude that the professional negligence claim that the Fierles allege against Mitchell in their complaint falls under NRS 41A.100(1). Specifically, the Fierles allege that Mitchell's negligence caused "a complete extravasation of chemotherapy drugs resulting in severe pain, burning, and permanent injury" of Patricia's skin, which has resulted in "physical injury and damages, including second-degree internal burns [and] permanent scar tissues." Under

---

*quired and a rebuttable presumption that the personal injury or death was caused by negligence arises where evidence is presented that the personal injury or death occurred in any one or more of the following circumstances:*

. . . .

(c) An unintended burn caused by heat, radiation or chemicals was suffered in the course of medical care.

(Emphasis added.)

[8]We conclude that both intentional and negligence-based medical malpractice claims are included in the affidavit requirement. The plain language of the definition of medical malpractice does not differentiate between negligent and intentional causes of action and, as such, is not limited to negligence claims as appellants argue. *See* NRS 41A.009.

[9]In order to meet the prima facie requirements for a res ipsa loquitur case, "the plaintiff must present facts and evidence that show the existence of one or more of the situations enumerated in NRS 41A.100(1)(a)-(e)." *Szydel*, 121 Nev. at 460, 117 P.3d at 205.

NRS 41A.100(1)(c), a res ipsa loquitur exception for a "provider of medical care" exists when "[a]n unintended burn caused by heat, radiation or chemicals was suffered in the course of medical care." The term "provider of medical care" as used in NRS 41A.100(1)(c) expressly applies to registered nurses. NRS 41A.100(3). Thus, the professional negligence claim alleged against registered nurse Mitchell survives.

However, the professional negligence claims alleged against Dr. Perez, Cruet, and Lesperance do not fall under this statute since they did not administer the chemotherapy that caused Patricia's burns. Rather, the professional negligence claims against Dr. Perez, Cruet, and Lesperance involve allegations of negligent training and supervision. As such, these claims are not ones that can be intrinsically subsumed under the res ipsa loquitur exception, such that negligence must be established and cannot be inferred. NRS 41A.100(1) does not provide an exception to the expert affidavit requirement under the res ipsa loquitur doctrine in such circumstances.

Accordingly, we conclude that the district court erred in dismissing the Fierles' medical malpractice claim against Mitchell because this claim falls under one of the res ipsa loquitur exceptions such that the Fierles were not required to file an expert affidavit with their claim.

*Relation back to the amended complaint*

We next consider whether an amended complaint may relate back to a complaint that was filed without the required medical expert affidavit but that contains some claims that do not require a medical affidavit, thereby curing the failure to attach the expert affidavit and thus making the entire complaint valid. We conclude that it cannot.

We have held that complaints filed under NRS 41A.071 without an affidavit from a medical expert are void ab initio and must be dismissed. *Washoe Med. Ctr. v. Dist. Ct.*, 122 Nev. 1298, 1300, 148 P.3d 790, 792 (2006). Under this reasoning, we have concluded that such complaints may not be amended because they are void and do not legally exist. *Id.* "This interpretation is consistent with the underlying purpose of . . . [NRS 41A.071], which is to ensure that such actions be brought in good faith based on competent expert opinion." *Borger v. Dist. Ct.*, 120 Nev. 1021, 1029, 102 P.3d 600, 606 (2004). We further conclude here that this rule applies even when only some of the claims violate the NRS 41A.071 affidavit requirement. That is, the claims can be severed, dismissing some while allowing others to proceed. *Szydel*, 121 Nev. at 460, 117 P.3d at 205.

Therefore, we conclude that an amended complaint may not relate back to a complaint that lacked a required medical expert affidavit,

but contained some claims that do not require a medical affidavit, thereby making the entire complaint valid. Specifically, we conclude that medical malpractice and professional negligence claims made in a complaint that become void ab initio for lack of the attachment of an expert affidavit may not be cured by the amendment of that complaint, regardless of whether other claims in the original complaint survive.

## CONCLUSION

We conclude that the district court did not err in dismissing the Fierles' complaint with respect to claims made against nurses, nurse practitioners, and Dr. Perez's professional medical corporation because we conclude that an expert affidavit is required for medical malpractice and professional negligence claims against such parties. We further conclude that the district court erred in dismissing the Fierles' medical malpractice claims against Mitchell because those claims fall under the res ipsa loquitur statutory exception to NRS 41A.071 and, thus, did not require an expert affidavit to be filed with the complaint. We additionally conclude that an amended complaint cannot cure a complaint that becomes void ab initio for the failure of a party to attach the required medical expert affidavit under NRS 41A.071.

Accordingly, we reverse in part and affirm in part the district court's order, and we remand the case for further proceedings consistent with this opinion.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, SAITTA, and GIBBONS, JJ., concur.

PICKERING, J., concurring in part and dissenting in part:

The majority concludes that the affidavit requirement in NRS 41A.071 applies to a physician's medical corporation and nurse. While I agree with the result, I respectfully disagree with the reasoning used to reach it. "Medical malpractice" is a type of "professional negligence," such that the "professional negligence" statutes apply to "medical malpractice." However, I submit that the syllogism does not run in reverse, such that the statutes specific to "medical malpractice" apply to all types of "professional negligence." The majority's contrary holding disregards settled rules of statutory construction and goes further than is needed to decide this appeal, with potentially disruptive consequences.

I also question the disposition of the res ipsa loquitur claims. If the Fierles' unintended chemical burn claims qualify under *Szydel v. Markman*, 121 Nev. 453, 117 P.3d 200 (2005), and NRS 41A.100(1)(c), as res ipsa loquitur claims that do not need a supporting expert affidavit under NRS 41A.071, there does not appear to be a sound basis to distinguish between the actor (Nurse Mitchell)

and the person with the legal duty to supervise the actor (Dr. Perez) in regard to them. Either we continue to adhere to *Szydel*, or we don't, but we confuse things by applying the res ipsa loquitur doctrine halfway.

*NRS 41A.071 applies to this "medical malpractice" case but not to all "professional negligence" claims*

NRS 41A.071 imposes its affidavit requirement only on "an action for medical malpractice."[1] The phrase "medical malpractice" is defined in NRS 41A.009 as "the failure of a physician, hospital or employee of a hospital, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances." "Hospital" is not defined in Chapter 41A but "physician" is, as "a person licensed pursuant to chapter 630 or 633 of NRS." NRS 41A.013.

In contrast, the provisions respecting "professional negligence" by "provider[s] of health care" that were added to Chapter 41A in 2004 include, but cover more than, "medical malpractice." Thus, NRS 41A.015 defines "professional negligence" as "a negligent act or omission to act by a provider of health care in the rendering of professional services." "Provider of health care" includes not just "a physician licensed under chapter 630 or 633 of NRS" and a "hospital and its employees," NRS 41A.017; *see* NRS 41A.009, but also a "dentist, licensed nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, [and a] medical laboratory director or technician." NRS 41A.017. Unlike the affidavit requirement in NRS 41A.071, which only addresses actions for "medical malpractice" (or "dental malpractice"), the 2004 amendments to NRS Chapter 41A added multiple provisions that, by their terms, apply to all "professional negligence" claims against a range of "provider[s] of health care," including but not limited to limits on noneconomic damages, NRS 41A.035, abolition of joint and several liability, NRS 41A.045, and special statute of limitations and tolling rules. NRS 41A.097.

The majority holds that the affidavit requirement in NRS 41A.071 "requires the attachment of expert affidavits for professional negligence claims," as defined in NRS 41A.015, against all "provider[s] of health care," as defined in NRS 41A.017. *Ante* at 738. This holding proceeds from the premise that the 2004 amendments to NRS Chapter 41A created a statutory "ambiguity." *Id.* at 737. Specifically, the majority finds it inconsistent with the "intent" of the 2004 amendments to Chapter 41A for NRS 41A.071 to only apply to "medical malpractice" and not to "professional negligence" by

---

[1]NRS 41A.071 also applies to "dental malpractice," but this aspect of the statute is not involved in this case.

"providers of health care" generally. *Id.* at 737-38. Thus, under the majority's interpretation, a plaintiff wishing to sue a "dispensing optician, optometrist, [or] registered physical therapist," NRS 41A.017, must obtain the expert affidavit NRS 41A.071 requires in "medical malpractice" actions.[2]

"It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute . . . so that no part will be inoperative or superfluous, void or insignificant . . . ." Norman J. Singer and J.D. Shambie Singer, 2A *Sutherland Statutory Construction* § 46:6, at 230-42 (7th ed. 2007) (internal quotation omitted). While the 2004 amendments to NRS Chapter 41A could have replaced "medical malpractice" with "professional negligence" everywhere the former appeared, this change wasn't made; the medical malpractice-specific statutes were left intact. This leaves us to interpret "[t]he unchanged sections [of the original statute] and the amendment . . . so they do not conflict. All the provisions of both are given effect and reconciled, if possible." 1A *id.* § 22:35, at 404-05. Applying these rules of statutory construction, I respectfully submit that NRS 41A.071's affidavit requirement should be read as limited to "medical malpractice" (or "dental malpractice") actions rather than expanded judicially to apply to all "professional negligence" cases.

This said, I agree with the majority that the affidavit requirement in NRS 41A.071 applies to the defendant professional corporation, nurse, and nurse practitioner in this case. In her complaint, Ms. Fierle alleges she was burned as a result of the negligent administration of the chemotherapeutic agent epirubicin, injected by a nurse trained and supervised by Dr. Perez. This drug could not have been administered except by or under the supervision of a physician. NRS 630.369(1)(c).[3] While the "services" may not have been personally provided by a "physician" but rather by a nurse acting

---

[2]Other medical malpractice-specific statutes that were unchanged by the 2004 amendments to NRS Chapter 41A include NRS 41A.061 (time to trial), NRS 41A.081 (mandatory settlement conferences), and NRS 41A.085 (settlement).

[3]Entitled "[i]njecting patient with certain chemotherapeutic agents," NRS 630.369 was added to the NRS in 2007. This statute provides that

[a] person, other than a physician, shall not inject a patient with any chemotherapeutic agent classified as a prescription drug unless:

(a) The person is licensed or certified to perform medical services pursuant to this title [54];

(b) The administration of the injection is within the scope of the person's license or certificate; and

(c) The person administers the injection under the supervision of a physician.

NRS 630.369(1). Although enacted after Ms. Fierle's treatment, this statute appears to declare professional standards, not to impose new ones, and thus may be fairly consulted, certainly at the pleading stage.

under a physician's supervision, the statute defining "medical malpractice," NRS 41A.009, speaks in terms of "the failure of a physician, . . . *in rendering services*, to use . . . reasonable care, skill or knowledge," (emphasis added), focusing on the nature of the services rendered and their relationship to a physician, not the agent or agents who may physically assist the physician in rendering service. Since the injection Ms. Fierle received bears a substantial relationship to the rendition of medical treatment by a licensed physician, Dr. Perez, I would hold that this action qualifies as an "action for medical malpractice," to which NRS 41A.071's affidavit requirement applies, even as to his entity and assisting nurse. Other courts, confronted with similar statutes, have so held, and I would follow their lead here, avoiding the expansive statutory interpretation the majority pursues. *See Potter v. McLeary*, 774 N.W.2d 1 (Mich. 2009) (applying affidavit-of-merit requirement to physician's corporate entity as well as physician); *Gunter v. Laboratory Corp. of America*, 121 S.W.3d 636, 640 (Tenn. 2003) (noting that "the medical malpractice statute may extend to acts of non-physicians such as nurses, when they are involved in the medical treatment of a patient"), *discussed in Ward v. Glover*, 206 S.W.3d 17, 25-27 (Tenn. Ct. App. 2006) (noting that the test for whether the medical malpractice statute applies is whether the "allegations describe conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional" (internal quotation omitted)); *cf. Bleiler v. Bodnar*, 479 N.E.2d 230, 234 (N.Y. 1985) (noting that nurses provide sophisticated medical care and that, while "not every negligent act of a nurse would be medical malpractice, . . . a negligent act or omission by a nurse that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice").

*Res ipsa loquitur*

Negligence by a nurse performing services ultimately under a physician's supervision or control is a classic example of a situation in which both the actor (the nurse) and another with a legal duty to the patient (the physician) can be subject to res ipsa loquitur:

> A undergoes an operation. B, the surgeon performing the operation, leaves it to C, a nurse, to count the sponges used in the course of it. B is under a legal duty to A to exercise reasonable care to supervise the conduct of C in this task. After the operation a sponge is left in [A]'s abdomen. It can be inferred [by application of res ipsa loquitur] that this is due to the negligence of both B and C.

Restatement (Second) of Torts § 328D cmt. g, illus. 9 (1965). These are almost *Szydel's* facts, and the rule of law they illustrate requires

reversal as to both the doctor and the nurse, if *Syzdel* applies. Since the injection of the prescription-only chemotherapeutic agent necessarily occurred under the physician's supervision, NRS 630.369, remand as to the nurse requires remand as to both the physician and the nurse under traditional res ipsa doctrine. *Compare* S. Speiser, 2 *Res Ipsa Loquitur* § 24:6, at 211 (1972) (noting that "the presence of multiple defendants in a medical malpractice action does not, of itself, render the doctrine of res ipsa loquitur inapplicable"), *with* Restatement (Second) of Torts § 328D cmt. g (noting that "[t]he essential question" in determining whether the res ipsa doctrine applies against multiple defendants is whether "the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against").

The dissent in *Szydel*, 121 Nev. 453, 117 P.3d 200, and a plain reading of NRS 41A.071 and NRS 41A.100, persuade me that NRS 41A.071's affidavit requirement should apply to all medical malpractice actions, without regard to whether one of the res ipsa loquitur exceptions in NRS 41A.100(1) might ultimately apply at trial. However, *Szydel*'s interpretation of the relationship between NRS 41A.071 and NRS 41A.100 is on the books, and the Fierles relied on it in this case, making it unfair to change the rules midgame. But even though *Szydel* dispenses with NRS 41A.071's initial affidavit requirement as to the Fierles' allegations of an unintended chemical burn, the decision does not relieve the Fierles of their burden to qualify their burn claims legally and factually under NRS 41A.100(1)(c). *Szydel*, 121 Nev. at 460 n.32, 117 P.3d at 205 n.32; Restatement (Second) of Torts § 328D cmt. g (noting that in multiple defendant res ipsa cases the plaintiff must demonstrate "that the defendant is responsible for all reasonably probable causes to which the event can be attributed"). Given that the negligence may have been that of the surgeon who inserted Ms. Fierle's port, or some other person or agency, that burden may well prove unsustainable and certainly will require expert proof to substantiate. These problems will require resolution on remand and illustrate the difficulties with *Szydel* that may ultimately require its legislative or judicial limitation.