WADE SMITH, an Individual; and BRENDA SUE SMITH, an Individual, Appellants, v. KISORIN USA, INC., a Delaware Corporation, Respondent.

No. 54988

July 7, 2011                                              254 P.3d 636

*Sinai, Schroeder, Mooney, Boetsch, Bradley & Pace* and *Thomas C. Bradley*, Reno, for Appellants.

*Greenberg Traurig* and *Tami D. Cowden* and *Brandon Roos*, Las Vegas, for Respondent.

Before CHERRY, GIBBONS and PICKERING, JJ.

## OPINION

By the Court, CHERRY, J.:

In this appeal, we consider whether a corporation is required to deliver a dissenters' rights notice to all stockholders, irrespective of whether the stockholders hold the stock in street name or are beneficial stockholders. We conclude that a construction of the applicable statutes that would require notice to both street name and beneficial stockholders would place unfeasible requirements on corporations. Due to the impracticality of delivering notice to beneficial owners, we conclude that Nevada corporations are required to send dissenters' notices only to record stockholders, including those holding the stock in street name.

### FACTUAL AND PROCEDURAL HISTORY

In August 2008, appellants and siblings Wade and Brenda Sue Smith owned shares of common stock in Pachinko World, Inc. The Smiths' shares were held in street name by Cede & Co., the nominee for the Depository Trust Company.[1] Thus, Cede & Co. was the stockholder of record, while the Smiths were the beneficial owners of the shares.

---

[1]The term "street name" refers to a "brokerage firm's name in which securities owned by another are registered." *Black's Law Dictionary* 1557 (9th ed. 2009). A beneficial holder of stock holds equitable title to corporate stock; however, the stock is not registered under the holder's name in the corporation's records. *Id.* at 176. Thus, in practice, the beneficial holder of stock holds equitable title to the stock that is registered under the holder in street name.

On August 28, 2008, Pachinko World merged with and into respondent Kisorin USA, Inc., in accordance with NRS 92A.180 (governing short-form mergers, which may occur when one of the merging companies owns at least 90 percent of the other company's shares). Under NRS Chapter 92A, a minority stockholder can dissent from certain actions of a corporation, including mergers, and obtain payment for the fair value of his or her shares. NRS 92A.380; NRS 92A.410; *American Ethanol v. Cordillera Fund*, 127 Nev. 147, 252 P.3d 663 (2011). Thus, as a result of the merger at issue here, Kisorin sent out a dissenters' rights notice and information statement to the minority stockholders, as required by NRS 92A.410(2). The dissenters' rights notice provided that no action was required by the minority stockholders for the merger to become effective because Kisorin owned at least 90 percent of the outstanding shares of common stock. The notice further provided that the merger became effective on August 28, 2008, and each share issued and outstanding was canceled and converted into the right to receive $0.20 in cash, subject to the rights of the minority stockholder to seek appraisal of the "fair value" by following the procedures required by NRS 92A.300 to 92A.500 for a dissenting stockholder.

The notice required that the dissenting stockholder must make a written demand for a "fair value" appraisal to Kisorin within 45 days after the date of mailing of the dissenter's notice. The notice provided that in order to receive a cash payment for the appraised value of the shares, the minority stockholder must complete the letter of transmittal, together with any required signature guarantees, and present these documents and the stock certificates to the paying agent. Failure to submit the stock certificates with the dissenter's demand would result in Kisorin having the ability to terminate the minority stockholder's rights pursuant to NRS 92A.300 to 92A.500. The notice also provided that if the stockholder failed to make a timely demand, the stockholder would lose the right to exercise the dissenter's appraisal rights and would be bound by the terms of the merger.

Although Kisorin possessed a list of the beneficial stockholders of Pachinko World who had not objected to sharing their information, including the Smiths, the Smiths were not directly given notice of the merger and their dissenters' rights. Instead, Kisorin provided Cede & Co. with the dissenter's notice on September 5, 2008, when it mailed the notice to all record stockholders.

Wade Smith declared that he did not receive information about the merger until November 2008, when he had a discussion with his transfer agent. Thereafter, he contacted Toshio Hara, a representative of Kisorin, and requested a copy of the agreement and plan of merger and the notice of merger. On November 27, 2008, Hara sent Wade Smith the requested documents. Hara noted that

the documents were provided directly to Wade Smith for his convenience and that the notice was previously sent to all stockholders on the stockholder registry, including Cede & Co., holder in street name for the Smiths.

Wade Smith first sent a dissenter's demand on December 4, 2008. Then on January 2, 2009, Wade Smith sent a letter to Hara informing Kisorin that its fair-value offer was unacceptable, that he was exercising his dissenters' rights, and that the fair value of his 867,200 shares was $3,702,944, or $4.27 per share. A dissenter's demand form dated January 2, 2009, was attached. Brenda Sue Smith also sent a dissenter's demand form dated December 5, 2008. Neither of the Smiths included with their demands the stock certificates or a written consent from the stockholder of record, Cede & Co.

On January 6, 2009, Wade Smith's attorneys sent Hara a letter via facsimile, stating that they were re-noticing Kisorin of Wade Smith's continued assertion of his right to dissent to the merger and that Wade Smith was entitled to all rights and remedies afforded to a dissenting stockholder under NRS Chapter 92A. This letter, also, did not include with it the stock certificates or a written consent from the stockholder of record, Cede & Co. On January 22, 2009, Kisorin responded to the letter, stating that a written notice of the right to dissent was delivered to all record holders of Pachinko World stock on September 5, 2008, and Wade Smith's demand for payment was made outside the 45-day period allotted, so he would be paid the merger consideration set forth in the notice.

Kisorin filed a petition asking the district court to determine the fair value of the stock pursuant to NRS 92A.490(1) and for a declaratory judgment. After an answer and reply were filed, Kisorin moved for summary judgment, and the Smiths filed a cross-motion for summary judgment. The district court entered summary judgment against the Smiths, concluding that Kisorin, by placing Cede & Co. on notice of the merger on September 5, 2008, likewise placed the Smiths on notice of the merger that same day and properly discharged its notice obligation under Nevada law. The district court also concluded that stockholders, such as the Smiths, who choose to hold their shares through a nominee, bear the burden of exercising their stockholder rights through the nominee. The district court found that the dissenter's notice complied in all respects with Nevada law and, accordingly, the Smiths had an affirmative obligation to demand payment for their shares by the 45-day deadline, which they failed to do. Because of this failure to demand payment, the district court concluded that the Smiths were not entitled to payment for their stock at their fair value estimate of $4.27 per share under the Nevada dissenters' rights statute. Therefore, the district court granted Kisorin's motion for summary judgment

and denied the Smiths' cross-motion for summary judgment, concluding that the Smiths waived their right to demand payment for their stock in Pachinko World in an amount exceeding $0.20 per share. This appeal followed.

## DISCUSSION

On appeal, the Smiths raise one issue—whether their failure to demand payment by the deadline was excused by Kisorin's failure to directly provide them with notice of their dissenters' rights. The Smiths argue that pursuant to NRS 92A.430, Kisorin was required to deliver a notice to all stockholders entitled to assert dissenters' rights, irrespective of whether the stockholders were stockholders in street name or beneficial stockholders, and that it failed to do so. The Smiths further contend that although Kisorin knew that they were beneficial stockholders of Pachinko World and that it was required to provide them with a written dissenter's notice, it simply chose not to do so. Kisorin contends that the Smiths' proposed construction of the applicable statutes would place impracticable requirements on Nevada corporations and would lead to an absurd result. We agree with Kisorin and affirm the district court's decision because only stockholders of record are entitled to receive a dissenters' rights notice under NRS Chapter 92A.

We review an order granting summary judgment de novo. *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010). "Summary judgment is appropriate when the pleadings and other evidence establish that no 'genuine issues as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (alteration in original) (quoting *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005)). "The construction of statutes is a question of law, which we review de novo." *Id.* "Further, this court has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized." *Id.* "[W]e consider 'the policy and spirit of the law and will seek to avoid an interpretation that leads to an absurd result.'" *Fierle v. Perez*, 125 Nev. 728, 735, 219 P.3d 906, 911 (2009) (quoting *City Plan Dev. v. State, Labor Comm'r*, 121 Nev. 419, 435, 117 P.3d 182, 192 (2005)).

NRS 92A.410(2) provides that when a merger is effected without stockholder approval under NRS 92A.180, the Nevada corporation "shall notify in writing all stockholders entitled to assert dissenters' rights that the action was taken and send them the dissenters' notice described in NRS 92A.430." NRS 92A.430, in turn, provides that the corporation "shall deliver a written dis-

senter's notice to all stockholders entitled to assert dissenters' rights'' and details what must be included in the notice. We conclude that the requirement of NRS 92A.410(2) and NRS 92A.430 that all stockholders entitled to assert dissenters' rights receive a notice must be read as meaning that a dissenters' rights notice need only be directly provided to the holder of record, who holds the stock in trust for or as agent of the beneficial stockholder, thereby directly and indirectly providing notice to all stockholders as required by the statutes. We reach this conclusion because, as discussed below, interpreting the statutes at issue to require notice to individual beneficial but unrecorded owners would be impracticable.

Kisorin is not required to send dissenters' rights notices to beneficial owners because publicly traded corporations do not have access to contact information for all beneficial owners and are, in fact, unable to obtain this information unless that beneficial owner does not object. 17 C.F.R. § 240.14b-2(b)(4)(ii)(B) (2010); *id.* § 240.14b-3. While Kisorin had the contact information for some of the beneficial stockholders, it did not have that information for all of them. At the time of the merger, Kisorin possessed a list of the beneficial stockholders of Pachinko World who had not objected to sharing their information. This nonobjecting beneficial stockholders list included the Smiths' names, addresses, and ownership position. However, this was not a complete list of all of the beneficial owners. While federal regulations provide that a corporation may ask a record owner to provide a nonobjecting beneficial stockholders list, it has no means to obtain the objecting beneficial owners list as a matter of right. *See* 17 C.F.R. § 240.14a-13(b)(2). Objecting beneficial owners usually account for 75 percent of the beneficial owners, and nonobjecting beneficial stockholders usually account for the remaining 25 percent. *See* Marcel Kahan & Edward Rock, *The Hanging Chads of Corporate Voting*, 96 Geo. L.J. 1227, 1244-45 (2008). Accordingly, we conclude that it would be impracticable to require a corporation to send dissenters' rights notices to a population that it has no means of identifying as a matter of right.

Based upon this limitation, we conclude that the Legislature, in NRS 92A.410 and NRS 92A.430, could not have intended to require corporations to send notices to stockholders for whom they have no information.[2] Thus, the only reasonable interpretation of those statutes is that they require corporations to send dissenters'

---

[2]Our conclusion that only record stockholders are entitled to notice of a stockholders' meeting, NRS 78.370(3), accords with NRS 92A.410(1), which requires that a dissenters' rights notice be provided in the notice of the stockholder meeting at which the vote on a proposed corporate action will be taken.

rights notices only to record stockholders, who then, in turn, can provide notice to the beneficial stockholders for whom they hold the stock in street name. We reach this conclusion because of one very important reason—corporations do not have the right to access all beneficial owners' information. If we determined that beneficial owners must be notified, corporations would be unable to comply with the law. The Legislature could not have intended this absurd result. Accordingly, beneficial owners who are not also stockholders of record, such as the Smiths, are not entitled to be sent a dissenters' rights notice under NRS 92A.410 and NRS 92A.430.[3]

Moreover, in *Enstar Corp. v. Senouf*, 535 A.2d 1351, 1354-55 (Del. 1987), the Delaware Supreme Court discussed a similar situation and came to the same result. The court noted that

> [t]he use of security depositories by brokerage firms now is a common practice. The decision in that regard, however, is a matter which is strictly between the broker and its clients. . . . In making that choice, the burden must be upon the stockholder to obtain the advantages of record ownership. . . . The legal and practical effects of having one's stock registered in street name cannot be visited upon the issuer. The attendant risks are those of the stockholder, and where appropriate, the broker. . . . "If an owner of stock chooses to register his [or her] shares in the name of a nominee, he [or she] takes the risks attendant upon such an arrangement, including the risk that he [or she] may not receive notice of corporate proceedings, or be able to obtain a proxy from his [or her] nominee". . . . Here, the problem is one between the [shareholders] and their brokers.

*Id.* (citations omitted) (quoting *American Hardware Corp. v. Savage Arms Corp.*, 136 A.2d 690, 692 (Del. 1957)). Indeed, under this framework, the only reasonable interpretation of the statutes at issue is that notice must be sent to record holders and not beneficial owners.

---

[3]As an alternative ground for affirming the judgment, Kisorin contends that because both the Smiths and the owner in street name, Cede & Co., failed to submit a sufficient demand for payment with the stock certificates attached, they lost their right to a dissenter's appraisal. We agree. While the Smiths attempted an untimely dissent, it does not appear from the record that the Smiths attached the stock certificates or Cede & Co.'s written consent, as was required by the dissenters' rights notice and Nevada law. *See* NRS 92A.400(2)(a); NRS 92A.440(5) (stating that when a stockholder "does not demand payment or deposit his or her certificates where required, each by the date set forth in the dissenter's notice, [he or she] is not entitled to payment for his or her shares under this chapter"). Moreover, the Smiths do not contend that they fulfilled these requirements. Even if the demand deadline was waived, the Smiths provide no support for their argument that their failure to properly dissent should also be waived. Therefore, we also affirm the district court's summary judgment on this ground.

Based on the foregoing, we affirm the summary judgment of the district court because Kisorin properly provided the dissenters' rights notice to Cede & Co. as required by Nevada law.[4]

GIBBONS and PICKERING, JJ., concur.

---

[4]The Smiths further contend that a Nevada corporation is required to comply with both the NRS Chapter 92A dissenters' notice requirements and with the notice requirements set forth in the Code of Federal Regulations. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) (holding that state law is preempted by federal law if the state law conflicts with federal law or if "the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress"). The pertinent federal regulations require that a corporation send communications to the holder in street name, who then is required to timely send the information to the beneficial owners unless the corporation "does not provide assurance of reimbursement of [the record holder's] reasonable expenses." 17 C.F.R. § 240.14b-2(c)(2)(I) (2010); *see also id.* § 240.14a-13(a)(1)-(5); *id.* § 240.14b-2(b)(3). Consequently, if a corporation declines to reimburse the holder in street name, a beneficial owner may not receive materials from the corporation. Therefore, under federal law, Kisorin fulfilled its requirements by sending the notice to the stockholder in street name.