SILVER STATE DISPOSAL COMPANY and HERBERT TAYLOR, Appellants, *v.* LORENZO SHELLEY and GEORGIA SCOTT, THE SPECIAL ADMINISTRATOR OF THE ESTATE OF VERNON SCOTT, Respondents.

No. 19402

June 1, 1989                    774 P.2d 1044

*Barker, Gillock, Koning, Brown & Earley* and *Jerry S. Busby,* Las Vegas, for Appellants.

*Sabbath & Christensen,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Injured when a Silver State Disposal truck driven by Herbert Taylor collided with a vehicle they occupied, Shelley and Scott sought damages for their injuries and lost wages. Following a jury verdict and judgment entered in respondents' favor and an order denying remittitur, Silver State and Taylor have appealed, urging that the district court erred. We disagree.

Appellants first argue that the trial court committed reversible error by refusing appellants' proffered jury instruction, D-1, on respondents' duty to mitigate damages.[1]

---

[1] D-1 reads as follows:

> A person who has been damaged by the wrongful act of another is bound to exercise reasonable care and diligence to avoid loss and to minimize the damages, and he may not recover for losses which could have been prevented by reasonable efforts on his part or by expenditures that he might reasonably have made.

As a general rule, a party is entitled to have the jury instructed on all of his case theories that are supported by the evidence. *Jeep Corp. v. Murray*, 101 Nev. 640, 649, 708 P.2d 297, 303 (1985). A review of the record is required to see whether the evidence that was presented required the giving of an instruction on a plaintiff's duty to mitigate damages. We conclude that such an instruction was not required.

The thrust of Silver State's defense on the damage issue was that any of respondents' injuries were the result of pre-existing medical conditions or that any disability to work lasted only a relatively short period of time after the accident. On the latter point, the evidence was clearly conflicting.

The respondents' treating physician and two orthopedic surgeons testified that the respondents were able to return to their work as laborers prior to the trial that commenced two years after the accident. In stark contrast, the respondents' subsequent treating chiropractor testified that the respondents were still unable to return to work and would be unable to perform work as laborers indefinitely. However, he did testify that these individuals might benefit from vocational rehabilitation to prepare for another type of work. The respondents claimed that they were unable to return to work and had not looked for any other type of employment.

No testimony was elicited to establish that either Shelley or Scott could secure or be retrained for other, less strenuous work. Had this testimony been elicited along with the conflicting testimony as to the duration of the medical disability, then the instruction on mitigation of damages would have been required. *See* Southern Pac. Transp. Co. v. Fitzgerald, 94 Nev. 241, 243, 577 P.2d 1234 (1978).

A review of the record convinces us that an instruction on mitigation of damages was not essential because the jury was adequately instructed on the recovery for lost wages and future lost wages (reduced earning capacity). From the substantial amounts of the verdicts, it appears that the jury agreed with the chiropractor and rejected the physicians' opinions that the respondents were able to return to work.

Even assuming the appellants' proffered instruction was supported by the evidence, it must also be consistent with existing law. *Beattie v. Thomas*, 99 Nev. 579, 583, 668 P.2d 268, 271 (1983). Furthermore, even though it might embody a correct rule of law, the trial court may still refuse it if it has a tendency to mislead the jury. *See* Zelavin v. Tonopah Belmont, 39 Nev. 1, 7-8, 149 P. 188, 189 (1915).

Appellants' proposed instruction, while arguably stating a correct principle of law, tended to mislead the jury. Specifically, "[i]t is unquestioned that an injured person cannot recover for

damages which could have been avoided by the exercise of reasonable care.'' Automatic Merchandisers, Inc. v. Ward, 98 Nev. 282, 284, 646 P.2d 553, 554 (1982). *See also* Southern Pac. Transp. Co. v. Fitzgerald, 94 Nev. 241, 243, 577 P.2d 1234, 1235 (1978). However, it is equally true that the burden of proving failure to mitigate is upon the party whose wrongful act caused the damages. Cobb v. Osman, 83 Nev. 415, 422, 433 P.2d 259, 263 (1967). Appellants' proposed instruction was consistent with general mitigation principles, but was misleading because it did not allocate the appropriate burden of proof and suggested that respondents were duty bound to prove that they had mitigated their damages. *See* Churning v. Staples, 628 P.2d 180, 182 (Colo.App. 1981); Sutton v. Shufelberger, 643 P.2d 920, 923 (Wash.App. 1982). Hence, it was proper to refuse appellants' proffered mitigation instruction.

Appellants next argue that the district court committed reversible error by allowing respondents' counsel to question the venire during voir dire examination with regard to their interest in, or connection to, casualty insurance companies. Specifically, prior to voir dire, respondents indicated to the trial court that they intended to question potential jurors as to any ownership interests in casualty insurance companies. Respondents explained that they had a right to inquire and to flush out any prejudicial bias in favor of insurance companies. Appellants objected and argued that any mention of insurance would prejudice them and produce a tainted verdict. The district court overruled the objection and permitted the interrogation. Appellants maintain that the lower court committed prejudicial error. This is an issue of first impression in this jurisdiction.

At the outset, we note that the purpose of voir dire examination is to facilitate the identification and removal from the venire of individuals who, because of bias or prejudice, cannot serve as fair and impartial jurors. *See* Oglesby v. Conger, 507 P.2d 883, 885 (Colo.App. 1973); Borkoski v. Yost, 594 P.2d 688, 690 (Mont. 1979). In the context of insurance voir dire questioning, we must strike a balance between the potential for prejudice to plaintiffs if someone sympathetic to insurance companies remains on the jury and the possible prejudice to defendants resulting from considerations of insurance coverage rather than a fair assessment of liability. *See* Langley v. Turner's Express, Incorporated, 375 F.2d 296, 297 (4th Cir. 1967).

In striking this balance, we conclude, consistent with a majority of sister jurisdictions,[2] that the proper approach in voir dire

---

[2] *See, e.g.,* Duff v. Page, 249 F.2d 137 (9th Cir. 1957); City of Kotzebue v. Ipalook, 462 P.2d 75 (Alaska 1969); Tomblinson v. Nobile, 229 P.2d 97

involving personal injury cases is to allow "good faith" questioning of the venire concerning interests in, or connections with, casualty insurance companies. By "good faith," we mean questioning for the purpose of ascertaining the qualifications of perspective jurors and for ferreting out bias and prejudice, and not for the purpose of informing them that there is insurance in the case.

In so holding, we are not unmindful of the interests and concerns of personal injury defendants. On the contrary and as suggested above, an examination of the nature approved herein is not without limits both in terms of the scope and manner of questioning. Obviously, there must be limits that have due regard for the interests of fairness to both parties.[3] Borkoski v. Yost, 594 P.2d 688, 690 (Mont. 1979). However, in an age of mandatory automobile insurance,[4] we recognize that even unsophisticated jurors are often aware of the fact that insurance coverage may exist and thus, some prejudice may be unavoidable.

Applying the foregoing to the facts of this case, we conclude that the district court properly allowed voir dire questions on the subject of insurance company affiliation.[5]

We have carefully considered appellants' remaining contentions and conclude that they lack merit. Accordingly, we affirm the judgment entered below.

---

(Cal. 1951); Oglesby v. Conger, 507 P.2d 883 (Colo.App. 1972); Owen v. Burcham, 599 P.2d 1012 (Idaho 1979); Borkoski v. Yost, 594 P.2d 688, 694 (Mont. 1979); Canter v. Lowrey, 364 P.2d 140 (N.M. 1961); 47 Am.Jur.2d *Jury* § 333 (1969); Annotation, *Showing As To Liability Insurance,* 4 A.L.R.2d 761, 792 (1949).

[3]We do not consider whether the time has come to forthrightly inform juries of the existence of insurance coverage in terms designed to produce fair deliberations on behalf of plaintiffs, defendants and insurers. It is conceivable, however, that in doing so with appropriate candor and sensitivity, the resulting enlightenment may serve to produce greater fairness to defendants and insurers, if not injured plaintiffs, than the existing speculation that permeates the current deliberations of our juries.

[4]*See, e.g.,* NRS 485.185.

[5]Appellants also contend that the respondents failed to act in "good faith." However, this contention was not raised in the court below and will not be considered on appeal. *See* Tupper v. Kroc, 88 Nev. 146, 151, 494 P.2d 1275, 1278 (1975).