ERIKA DuBOIS, as Guardian Ad Litem of KORIN DuBOIS, a Minor, Appellant, v. RICHARD GRANT, Respondent.

No. 21158

July 21, 1992

835 P.2d 14

*Edward M. Bernstein & Associates* and *Robert R. Jensen,* Las Vegas, for Appellant.

*Thorndal, Backus, Maupin & Armstrong* and *Craig R. Delk,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

Korin DuBois (Korin), the daughter of appellant Erika DuBois (DuBois), suffered facial injuries when she was kicked by a horse owned by respondent Richard Grant. The injury occurred while Grant was hosting a barbecue for several friends, including the DuBois family. DuBois gave Korin permission to feed Grant's horse, which was in a corral behind the house. Although there were no witnesses, it is likely that Korin was kicked when she entered the horse's corral through an opening in the fence.[1]

Initially, Korin's parents were unable to get her admitted to the hospital for treatment because they lacked sufficient funds. When Grant learned of the situation, he gave his son about $300 and instructed him to get Korin admitted to the hospital. Korin subsequently incurred $7,684.47 in medical bills which were paid by Grant's insurance carrier under his homeowner's policy.

DuBois filed a complaint alleging that Grant knowingly kept a dangerous horse and seeking compensation for Korin's pain and suffering and the anticipated costs of future medical expenses. Grant denied the allegations of the complaint and claimed contributory negligence and negligent supervision by Korin's parents as affirmative defenses. Later, Grant filed a third-party complaint against Korin's parents seeking contribution or indemnity.

Before trial, Grant moved *in limine* to preclude anyone from mentioning to the jury that Grant's insurance company had paid the DuBois for Korin's injuries.[2] DuBois agreed that any mention of insurance was improper, but insisted that it would be misleading to inform the jury that Grant himself had paid Korin's medical bills. The district court, in granting the motion, ruled that the jury could be advised that Grant had paid Korin's medical bills because Grant had paid premiums for homeowner's liability insurance to protect him in the event of just such an accident.

As a result of the court's ruling *in limine,* defendant's opening statement informed the jury that Grant had paid $300 to get Korin admitted to the hospital, and $7,684.47 in medical bills. In closing argument, Grant's counsel stated that Grant had paid all of Korin's past medical bills. DuBois' objections to these statements were overruled. The jury's verdict found Grant free of negligence in connection with the accident.

DuBois contends that it was erroneous for the district court to

---

[1]Korin was only four years old when the accident occurred, and was unable to recall the details of the event with any consistency.

[2]See NRS 48.135 and NRS 687B.250(1), which limit the introduction of evidence of insurance coverage at trial.

allow the jury to be informed that Grant had paid $7,684.47 for Korin's medical bills when in fact, Grant's homeowners insurance had covered these expenses. Without determining whether it was error to permit this information to be presented to the jury, we conclude that any error which may have occurred below was harmless.

Although DuBois contends that Grant received an unfair advantage by informing the jury that he had paid Korin's medical bills, DuBois offset any inferences that were favorable to Grant by ascribing an alternative motive to him. DuBois was a third-party defendant in this action in addition to being the plaintiff. As a third-party defendant, DuBois told the jury that Grant's payment of Korin's medical bills "was an acknowledgement of responsibility," and an admission that "he knows he did wrong."[3]

On appeal, DuBois claims that despite her counsel's statement that Grant "[went] into his pocket to the tune of $7,000," and attempting to use this payment as an admission of wrongdoing, she is entitled to a new trial because the jury was told that Korin's medical bills were paid "by Grant" instead of "on Grant's behalf."[4]

Any benefit inuring to Grant because the jury may have thought that Grant had paid the bills out of his own pocket was most probably minimized, if not eliminated, by DuBois' counsel's emphasis on the payments as an admission of fault.[5] DuBois'

---

[3]Although this argument may have violated NRS 48.115, which states that "[e]vidence of furnishing or offering or promising to pay medical, hospital or similar expenses occasioned by an injury is not admissible to prove liability for the injury," Grant's counsel failed to object when this occurred.

[4]Had the jury been told, as DuBois requested, that Korin's medical bills had been paid "on Grant's behalf," the inference would likely have been either that Grant's insurance company paid the bills (which would improperly suggest that Grant had insurance) or that Grant himself had paid, or arranged for the payment of, the bills. It is arguable that DuBois' counsel eliminated ambiguity resulting from the statement by Grant's counsel that Grant "had paid" the bills (which to a knowledgeable juror or jury could have meant either personally or through his insurance carrier) by declaring that Grant "[went] into his pocket to the tune of $7,000."

[5]We do not share the dissenting justice's concern with the possibility that the jury returned a sympathy verdict for Grant. Although DuBois has complained that her case was prejudiced by the portrayal of Grant as a "nice guy" because he paid for Korin's medical bills, DuBois' own lawyers were the strongest proponents of this idea, as they repeatedly praised Grant's character. For example, in opening argument DuBois' counsel stated that "Mr. Grant is a very nice person and I like him personally" and "Mr. Grant is a good person. He's a nice person." DuBois' other attorney chimed in that everyone agreed "what a good guy Mr. Grant is" and "I applaud him for [paying Korin's medical bills]." Therefore, DuBois was the first to bring Grant's character to the attention of the jury. There is an equal possibility that any sympathy in this case weighed in favor of the eight-year-old "cute little

ready willingness during trial to emphasize and capitalize on the fact that Grant paid for Korin's medical bills, creates little more than a hollow sound on appeal in complaining that this information should have been withheld from the jury.

Although the dissent urges that a new trial is warranted because the jurors were told that Grant paid for Korin's medical bills, we are convinced that if there was error in the trial court's ruling, it was harmless, especially in light of DuBois' escalation of the subject into a clear admission of liability by Grant. *See* NRCP 61.

We also determine that the district court acted within its discretion in refusing to permit questioning of the jurors regarding an interest in or connection with a casualty insurance company when the request was not timely submitted and may have prejudiced the defense. EDCR 7.70. Inquiry into jurors' potential connection to a casualty insurance company is not mandated in personal injury actions, although a district court may, in its discretion, properly permit such questioning. *See* Silver State Disposal Co. v. Shelley, 105 Nev. 309, 774 P.2d 1044 (1989).

We similarly conclude that the district court did not err in sustaining objections to questions which called for Grant to give a legal conclusion about the cause of the accident. *See* Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th Cir. 1983).

Finally, we determined that no impermissible "golden rule" argument was made by Grant. The suggestion by Grant that homeowners, including the jurors, are entitled to make their homes "convenient" did not impermissibly suggest that the jurors trade places with Grant.

For the reasons expressed above, we affirm the district court's order denying DuBois' motion for judgment notwithstanding the verdict or a new trial.

Rose, J., with whom Springer, J., joins, dissenting:

When Korin DuBois (Korin) was taken to the hospital, Richard

girl" (as Korin was referred to by counsel). However, the jurors were questioned on voir dire about their ability to remain impartial and were instructed before retiring not to let sympathy enter into their decision. We perceive nothing in their verdict to suggest that they did not heed the court's instructions.

In any event, the jury never reached the issue of damages because they quickly determined that Grant was not negligent. The jury was presented with sufficient evidence to determine that Grant's negligence was not the cause of the unfortunate accident. Accordingly, the question of who had paid what bills became of little or no consequence.

Grant (Grant) paid the $300.00 fee for her emergency treatment, and his homeowner's insurance subsequently paid an additional $7,684.47 toward her medical bills. The jury either should have been told the truth—that the medical expenses above $300.00 were paid on behalf of Grant—or should have been denied any information concerning who paid the medical bills and instructed not to speculate on the subject. The district court chose neither alternative, but rather permitted the jury to receive testimony that Grant himself had paid the bills. By doing this, the jury was informed of a fact that was untrue.

Grant was a reluctant defendant and the suit against him can be termed a friendly one. He was obviously very sorry that the accident happened and even admitted that he should have kept an eye on Korin when she was in the backyard near the horses. By incorrectly informing the jury that he paid all of the medical bills, he was made even more sympathetic in the eyes of the jury. Grant's counsel took full advantage of the admission of the erroneous fact in closing argument:

> Now, I have been doing this for over ten years and I've got to tell you that I would like to see a lot more people like Mr. Grant in these proceedings.
>
> Mr. Grant got up on the stand and he told you, yes, he felt responsibility for Korin while she was out in his backyard. He genuinely felt and feels terrible about this accident. I don't think there is any disputing that.
>
> Mr. Grant paid all of Korin's past medical bills— [objection—objection overruled]—to the tune of about $8,000. Mr. Grant takes this incident very seriously.

Although there is no way to ascertain the degree to which the jurors were influenced by the misinformation that Grant paid all medical bills, consideration of this factor probably added significantly to their feeling that Grant really did all that can be expected of a person on whose property an unfortunate accident occurs.

Once the evidentiary ruling was made permitting Grant to claim the insurance company's payment of medical bills as his own, DuBois attempted to use the improper ruling to her advantage. Specifically, in defending Erika DuBois against Grant's third-party claim, DuBois' attorney stated that Grant's payment of the medical bills was an acknowledgement of his responsibility.[1] I see nothing wrong with a party adjusting his or her case in

---

[1]This argument would have been susceptible to an objection based on NRS 48.115, that the offer to pay or payment of medical bills is not admissible to prove liability for an injury, but it appears all parties waived the applicability of this statute.

accordance with an adverse evidentiary ruling made by the court. Furthermore, Erika's argument was factually correct because Grant had paid $300.00 toward the medical bills.

Because the jury should have been told the truth about the payment of Korin's medical bills or told nothing at all, and because the incorrect information probably contributed to the defense verdict rendered in favor of Grant, I would reverse this case and remand it for a new trial.