# IN THE SUPREME COURT OF THE STATE OF NEVADA

REN YU ZHANG, M.D.; AND NEVADA
SURGERY AND CANCER CARE, LLP,
A NEVADA LIMITED PARTNERSHIP,
Appellants/Cross-Respondents,
vs.
DILLON MATHEW BARNES,
Respondent/Cross-Appellant.

No. 67219

FILED

SEP 1 2 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

This is an appeal and cross-appeal from an amended judgment on a jury verdict in a medical malpractice action and from an order denying a motion for judgment as a matter of law or a new trial. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

### I.

In May 2012, respondent/cross-appellant Dillon Barnes sued appellant/cross-respondent Dr. Ren Yu Zhang and his employer, appellant/cross-respondent Nevada Surgery and Cancer Care, LLP (NSCC), for medical malpractice and negligent hiring, training, and supervision, after a surgery left Barnes with severe burns. A jury found in favor of Barnes, awarding him $2,243,988 in damages, of which $2,000,000 consisted of noneconomic damages for past and future pain and suffering. Barnes sued others, including the hospital at which the surgery took place, but settled with them before trial.

A series of post-judgment motions followed entry of judgment on the jury verdict. Through a post-trial juror interview, defense counsel

discovered that an insurance declaration page showing Zhang's $1,000,000/$3,000,000 policy limits was inadvertently included as part of an exhibit the jury reviewed. Zhang and NSCC moved for a new trial on this basis.

In addition to moving for a new trial, Zhang and NSCC moved for judgment as a matter of law (JMOL) under NRCP 50(b) and to conform the verdict to the law pursuant to NRCP 59(e). The motion for JMOL disputed the imposition of liability on NSCC, while the motion to conform sought to apply the $350,000 cap on noneconomic damages to both Zhang and NSCC and to offset sums Barnes received from settlements. The district court denied the motions for new trial and JMOL. It applied the $350,000 statutory noneconomic damages cap to Zhang but not NSCC and applied settlement and collateral source offsets. As a result of these rulings, the district court entered an amended judgment awarding Barnes $411,579.09 from Zhang and $1,243,988.00 from NSCC.

## II.

Zhang and NSCC appeal several substantive issues, including whether the prejudicial insurance information the jury accidentally received warrants a new trial, whether a professional medical association such as NSCC can claim the benefit of the $350,000 cap on noneconomic damages provided in NRS 41A.035, and whether appellants/cross-respondents are entitled to settlement offsets. In his answering brief and cross-appeal, Barnes raises two procedural challenges that must be addressed first because, if we credit either challenge, it may eliminate in whole or in part the substantive issues presented on appeal.

## A.

Barnes challenges the timeliness of Zhang and NSCC's post-trial motions, arguing that EDCR 8.06(c) prohibits parties from extending service by three days for mail or electronic means when filing a motion for a new trial. The language in EDCR 8.06(c) is more restrictive than its counterpart, NRCP 6(e). There is no restrictive language in NRCP 6(e) that would exclude certain types of motions from adding three days for electronic service. *Cf. Winston Prods. Co. v. DeBoer*, 122 Nev. 517, 524, 134 P.3d 726, 731 (2006) ("[W]e hold that the 10-day time period for filing motions for judgment as a matter of law and for a new trial should be calculated first under NRCP 6(a), excluding intermediate Saturdays, Sundays and nonjudicial days. If service was made by mail or electronic means, 3 days should thereafter be added pursuant to NRCP 6(e)."). Under NRCP 83, local rules may "not [be] inconsistent with these rules." Thus, NRCP 6(e) controls. *See W. Mercury, Inc. v. Rix Co.*, 84 Nev. 218, 222-23, 438 P.2d 792, 795 (1968) ("The district courts have rule-making power, but the rules they adopt must not be in conflict with the Nevada Rules of Civil Procedure." (footnote omitted)). Accordingly, Zhang and NSCC's post-trial motions were timely.

## B.

Barnes also challenges as procedurally defective NSCC's argument that the district court erred in denying its NRCP 50(b) renewed motion for JMOL on Barnes' claim of negligent hiring, training, and supervision. This court reviews an order under either NRCP 50(a) or 50(b) de novo. *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 425 (2007). Before trial, NSCC moved for summary judgment under NRCP 56 on Barnes' claim of negligent hiring, training, and supervision, which the

district court denied. At the close of Barnes' case-in-chief, NSCC moved for JMOL under NRCP 50(a) as to punitive damages, but did not mention the negligent hiring, training, and supervision claim. Post-trial, NSCC filed an NRCP 50(b) motion for JMOL on the negligent hiring, training, and supervision claim, which Barnes challenged as procedurally deficient in that NSCC did not move for JMOL under NRCP 50(a) as to that claim. The district court did not address the procedural issue and denied the NRCP 50(b) motion on the merits. On appeal, Barnes contends that, despite NSCC's motion for summary judgment, NSCC's failure to move for JMOL during trial under NRCP 50(a) on the issue of negligent hiring, training, and supervision precluded its post-trial NRCP 50(b) motion on that issue.

Under NRCP 50(b), a party "may renew its request for judgment as a matter of law by filing a motion no later than 10 days after service of written notice of entry of judgment." A party must make the same arguments in its pre-verdict NRCP 50(a) motion as it does in its post-verdict NRCP 50(b) motion. *See Price v. Sinnott*, 85 Nev. 600, 607, 460 P.2d 837, 841 (1969) ("It is solidly established that when there is no request for a directed verdict, the question of the sufficiency of the evidence to sustain the verdict is not reviewable. A party may not gamble on the jury's verdict and then later, when displeased with the verdict, challenge the sufficiency of the evidence to support it." (citations omitted)). A pretrial motion for summary judgment is not a substitute for the NRCP 50(a) motion needed to preserve issues for review in a NRCP 50(b) renewed motion for judgment as a matter of law. *See, e.g., Jones ex rel. United States v. Mass. Gen. Hosp.*, 780 F.3d 479, 488-89 (1st Cir. 2015) (rejecting the argument that "a party satisfies Rule 50(b) by raising the

same grounds in his pretrial motion for summary judgment under Rule 56, and consequently, no separate Rule 50(a) motion is required" (internal quotations and alterations omitted)); *Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010) ("[E]ven if a defendant raises qualified immunity at summary judgment, the issue is waived on appeal if not pressed in a Rule 50(a) motion." (alteration in original) (quoting *Parker v. Gerrish*, 547 F.3d 1, 12 (1st Cir. 2008)); *Sharp Structural, Inc. v. Franklin Mfg., Inc.*, 283 F. App'x 585, 588 (9th Cir. 2008) ("[R]aising an issue in a motion for summary judgment is not sufficient to preserve it for review in a Rule 50(b) motion unless the argument is reiterated in a Rule 50(a) motion.").

Though some courts have recognized an exception to the rule that motions for summary judgment do not serve as a basis for a Rule 50(b) motion, the exception is limited to motions for summary judgment that present pure issues of law. *See, e.g., Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 185 (3d Cir. 2015) ("There is an exception to this general rule, however, for an order denying summary judgment on a 'purely legal issue' capable of resolution 'with reference only to undisputed facts.'" (quoting *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011))); *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 423 (4th Cir. 2005) (recognizing that some courts have allowed an exception for "appeals from a denial of summary judgment after a trial where the summary judgment motion raised a legal issue and did not question the sufficiency of the evidence"). Both in its motion for summary judgment and in its NRCP 50(b) motion, NSCC challenged the sufficiency of the evidence to establish Barnes' claim of negligent hiring, training, and supervision. Thus, because these issues are fact-based, even applying the exception for pure questions of law that some federal courts have made, NSCC's pretrial

motion for summary judgment does not excuse its failure to move for JMOL under NRCP 50(a). Though the district court should have denied the NRCP 50(b) motion for its procedural defect instead of addressing it on the merits, the district court reached the correct result in denying JMOL, so we affirm its decision in that respect. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010).

## C.

Zhang and NSCC argue that a new trial is warranted based on testimony mentioning Zhang had malpractice insurance and the inadvertent submission to the jury of Zhang's insurance declaration page. "This court reviews a district court's decision to grant or deny a motion for a new trial for an abuse of discretion." *Gunderson v. D.R. Horton, Inc.*, 130 Nev., Adv. Op. 9, 319 P.3d 606, 611 (2014). A district court may, in its discretion, order a new trial if there has been "plain error or manifest injustice," which exists "where 'the verdict or decision strikes the mind, at first blush, as manifestly and palpably contrary to the evidence.'" *Kroeger Props. & Dev., Inc. v. Silver State Title Co.*, 102 Nev. 112, 114, 715 P.2d 1328, 1330 (1986) (quoting *Price*, 85 Nev. at 608, 460 P.2d at 842).

In this case, the first two references to insurance occurred with NSCC's own witness, Dr. Stephanie Wishnev, who mentioned insurance twice in a general way while discussing how physicians become qualified for employment at NSCC. The third reference to insurance occurred with Barnes' expert, Dr. Stephen McBride. During direct examination, Barnes' counsel asked McBride to list everything he reviewed in forming his opinion. McBride listed over 60 documents, including "Dr. Zhang's insurance policy." Although Zhang and NSCC immediately approached the bench, asking for a mistrial, which the

district court ultimately denied, both parties and the district court recognized that a limiting instruction may draw more attention to the fact that Zhang had malpractice insurance and, thus, decided against the instruction. However, the district court admonished counsel and the witness to omit all references to insurance.

Also, pre-trial, the parties stipulated to admit a number of exhibits, some of which were voluminous. Among those exhibits was Zhang's hospital credentialing file, which apparently included as an attachment an insurance declaration page showing Zhang had malpractice insurance. This exhibit was submitted to the jury and, by inadvertence, neither party noticed the insurance declaration page. After Zhang's counsel discovered the existence of the insurance declaration page in a post-trial interview with jurors, she supplemented her motion for a new trial with a declaration from a juror that, during deliberations, the juror saw the insurance information with the policy limits. When ruling on Zhang's motion for a new trial, the district court made a specific finding of fact that the insurance declaration page was admitted into evidence and it showed that Zhang had a policy limit of $1,000,000. Nevertheless, the district court denied Zhang's motion for a new trial, concluding in part that Zhang and NSCC had relied on the credentialing file during trial, they received a fair trial, and "[t]here was no accident or surprise which ordinary prudence could not have guarded against. Both parties were given the opportunity to review the evidence binders that were given to the jury."

We conclude that the few references to insurance—two of them to the concept of insurance generally and one specific to Zhang—do not rise to the level of prejudice necessary to warrant a new trial. *Cf.*

*Silver State Disposal Co. v. Shelley*, 105 Nev. 309, 313, 774 P.2d 1044, 1047 (1989) (allowing mention of insurance in voir dire because, "in an age of mandatory automobile insurance, we recognize that even unsophisticated jurors are often aware of the fact that insurance coverage may exist and thus, some prejudice may be unavoidable" (footnote omitted)); *Stackiewicz v. Nissan Motor Corp.* 100 Nev. 443, 453, 686 P.2d 925, 931 (1984) (citing *Holden v. Porter*, 405 F.2d 878 (10th Cir. 1969), for the proposition that "mention of insurance coverage [is] not misconduct").

The inadvertent submission to the jury of Zhang's insurance declaration page, on the other hand, had the potential to prejudice the trial. As challengers to the district court's decision, Zhang and NSCC carried the burden to show that the district court abused its discretion in denying their motion for a new trial. *See Gunderson*, 130 Nev., Adv. Op. 9, 319 P.3d at 611. On appeal, Zhang and NSCC failed to include exhibit 32, Zhang's credentialing file, which contained the insurance declaration page(s) the jury received. NRAP 30(d) provides, "Copies of relevant and necessary exhibits shall be clearly identified, and shall be included in the appendix as far as practicable." Clearly, it was error for this exhibit to go to the jury, but without the exhibit in the record on appeal, this court is deprived of the opportunity to fully assess prejudice and, so, whether the district court abused its discretion in denying a new trial on this basis. Without the exhibit, this court cannot understand precisely what the jury saw and how that information appeared in the context of the exhibit as a whole. We therefore affirm the district court's denial of Zhang and NSCC's motion for a new trial. *See Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) ("When an appellant

SUPREME COURT
OF
NEVADA

(0) 1947A

8

fails to include necessary documentation in the record, we necessarily presume that the missing portion supports the district court's decision.").

### D.

Of the $2,243,988 the jury awarded Barnes in damages, $2,000,000 was for pain and suffering, which NRS 41A.011 denominates "noneconomic damages." NRS 41A.035 limits the noneconomic damages recoverable in a professional negligence action to $350,000. The district court applied the $350,000 cap to Zhang but not to NSCC, a ruling NSCC appeals. Whether NRS 41A.035 limits NSCC's liability for noneconomic damages to $350,000 as it does Zhang's presents a question of law and statutory interpretation that we review de novo. *See Zohar v. Zbiegien*, 130 Nev., Adv. Op. 74, 334 P.3d 402, 405 (2014).

As written before its amendment in 2015,[1] NRS 41A.035 (2004) read as follows:

> In an action for injury or death against a provider of health care based upon professional negligence, the injured plaintiff may recover noneconomic damages, but the amount of noneconomic damages awarded in such an action must not exceed $350,000.

"Provider of health care" and "professional negligence" are both defined terms. As written before their 2015 amendment, NRS 41A.017 (2011) defined "provider of health care" to mean "a physician licensed under

---

[1]The 2015 amendments to NRS 41A.035 added the phrase "regardless of the number of plaintiffs, defendants or theories upon which liability may be based," to the end of the sentence. 2015 Nev. Stat., ch. 439, § 3, at 2526. This amendment did not change NRS 41A.035; it clarified it. *See Tam v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 80, 358 P.3d 234, 240 (2015).

chapter 630 or 633 of NRS, dentist, licensed nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, licensed dietitian or a licensed hospital and its employees," while NRS 41A.015 (2004) defined "[p]rofessional negligence" to mean "a negligent act or omission to act by a provider of health care in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death. The term does not include services that are outside the scope of services for which the provider of health care is licensed or services for which any restriction has been imposed by the applicable regulatory board or health care facility."

NSCC argues that, as a professional medical association, its liability is derivative from Zhang's and, therefore, its liability should not exceed his. Barnes counters that NSCC does not fit into the statutory definition of "provider of health care" and that liability for negligent hiring, training, and supervision is not "based upon professional negligence." As the claims in this case were for professional negligence arising out of Zhang's services, we agree with NSCC.

1.

On the question of applying NRS 41A.035 to a defendant-doctor's professional medical association, this court confronted an analogous issue in *Fierle v. Perez*, 125 Nev. 728, 219 P.3d 906 (2009), *overruled on other grounds in Egan v. Chambers*, 129 Nev., Adv. Op. 25, 299 P.3d 364, 365, 367 (2013). *Fierle* addressed the expert affidavit requirement in NRS 41A.071, rather than the cap on noneconomic damages imposed by NRS 41A.035. *Id.* at 734-35, 219 P.3d at 910. As in this case, though, the plaintiff in *Fierle* argued that, while NRS Chapter 41A protected the defendant-doctor by requiring an expert affidavit, the

statutes did not by their terms extend the protection to the doctor's professional medical corporation, whom the plaintiff had also sued. *See id.* at 734, 219 P.3d at 910 ("Appellants argue that under these statutes an affidavit from a medical expert is not required in suits against a professional medical corporation."). At the time, NRS Chapter 41A required an expert affidavit to support "an action for medical malpractice," *see* NRS 41A.071 (2002), while NRS 41A.009 (1985) defined "medical malpractice" as "the failure of *a physician, hospital or employee of a hospital,* in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances." 1985 Nev. Stat., ch. 620, § 4, at 2006 (emphasis added).[2] Recognizing that professional medical entities were not mentioned in NRS 41A.009's list of persons who could commit medical malpractice protected by NRS 41A.071's affidavit requirement, *Fierle,* 125 Nev. at 734, 219 P.3d at 910, we nonetheless looked to NRS Chapter 89, addressing professional business associations, and extended NRS Chapter 41A's affidavit requirement to the doctor's professional medical corporation, equally with the doctor himself. *Id.* at 735, 219 P.3d at 910-11; *see also id.* at 741, 744, 219 P.3d at 914, 916 (Pickering, J., concurring and dissenting) (noting cases supporting the extension of medical malpractice protections to a physician's corporate entity as well as the physician where the claim arises out of medical treatment of a patient). In doing so, we stated "NRS Chapters 41A and 89 must be read in harmony" and that, so read, "the provisions of NRS

---

[2]The 2015 Legislature amended NRS 41A.071 to substitute "professional negligence" for "medical malpractice" and repealed NRS 41A.009. *See* 2015 Nev. Stat., ch. 439, §§ 6, 12, at 2527, 2529.

Chapter 41A must be read to include professional medical corporations." *Id.* at 735, 219 P.3d at 910-11.

At the time *Fierle* was decided, NRS 41A.071's affidavit requirement only applied to "medical malpractice" rather than "professional negligence" actions. *See supra* note 2. In addition to requiring an affidavit to bring suit against a professional medical corporation, *Fierle* equated "medical malpractice" with "professional negligence," using this logic to extend NRS 41A.071's affidavit requirement to nurses and nurse practitioners. *Id.* at 736-38, 219 P.3d at 911-12. In *Egan*, 129 Nev., Adv. Op. 25, 299 P.3d 364, this court overruled *Fierle* to the extent it deemed "medical malpractice" and "professional negligence" to be one and the same. The *Egan* court therefore reversed an order dismissing a suit against a podiatrist and the medical group that employed him for want of an NRS 41A.071 affidavit. *Egan* held that, because a podiatrist was not a "physician" as defined in NRS 41A.013, the action was for "professional negligence," not for "medical malpractice," and NRS 41A.071 did not apply. *Id.* at 366-67.

Barnes urges us to disregard *Fierle* because it was overruled in *Egan*. But *Egan* did not address *Fierle's* holding with respect to professional medical associations and the need to read NRS Chapters 41A and 89 together. While *Egan* reversed the order of dismissal against both the podiatrist and the medical group that employed him, it did so on the basis the claim asserted was for professional negligence, not medical malpractice, so NRS 41A.071 did not apply. This case, by contrast, presents no issue as to the distinction between "medical malpractice" and "professional negligence." The cap in NRS 41A.035 applies to all actions

for "professional negligence," not just the subset of actions for medical malpractice.

Under NRS 89.060 and NRS 89.220, as interpreted in *Fierle*, a physician's professional corporation, equally with the physician himself, can be a "provider of healthcare" for purposes of the cap NRS 41A.035 imposes on noneconomic damages in professional negligence actions.[3] In 2015, in fact, the Legislature amended the definition of "provider of healthcare" in NRS 41A.017 to expressly so state.[4] This amendment did not change but clarified the law, stating in express statutory terms the result reached on the issue of the interplay between NRS Chapters 40 and 89 in *Fierle*. Much as in *Tam*, 131 Nev., Adv. Op. 80, 358 P.3d at 240, we view the 2015 amendments to NRS 41A.017 and NRS 41A.035 as confirming our reading of the applicable statutory scheme. We therefore

---

[3]We reject Barnes' argument that a professional medical corporation is not a "person" for purposes of NRS Chapter 89. *See* NRS 0.039 (defining "person" to encompass "any form of business or social organization . . . including, but not limited to, a corporation, partnership, association, trust or unincorporated organization").

[4]The 2015 amendments to NRS 41A.017 (2011) are shown in italics:

> "'Provider of healthcare' means a physician licensed [under] *pursuant to* chapter 630 or 633 of NRS, *physician assistant*, dentist, licensed nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, licensed dietitian or a licensed hospital, *clinic, surgery center, physicians' professional corporation or group practice that employs any such person* and its employees.

2015 Nev. Stat., ch. 439, § 2, at 2526.

reject Barnes' argument that the 2015 amendment to NRS 41A.017 signified the Legislature's view that, before its amendment, NRS 41A.017 implicitly excluded professional medical corporations from NRS Chapter 41A.

2.

There remains the question whether Barnes' claims against NSCC were for "professional negligence," a requirement that also must be met before NRS 41A.035 can apply. This court has interpreted the term "professional negligence" broadly, concluding that it encompasses the term "medical malpractice." *Tam*, 131 Nev., Adv. Op. 80, 358 P.3d at 242. Given this broad definition, a case-by-case approach is appropriate to determine whether a professional negligence statute applies to claims grounded on legal theories besides malpractice. *See Smith v. Ben Bennett, Inc.*, 35 Cal. Rptr. 3d 612, 615 (Ct. App. 2005) ("[W]hen a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger [the Medical Injury Compensation Reform Act (MICRA)]. The answer is sometimes yes and sometimes no, depending on the particular cause of action and the particular MICRA provision at issue.").

In declining to apply NRS 41A.035 to cap NSCC's liability, the district court relied on our unpublished decision in *McQuade v. Ghazal Mountain Dental Group, P.C.*, Docket Nos. 61347, 61846 (Order of Reversal and Remand, September 24, 2014), for the proposition that "McQuade did not have to comply with NRS 41A.071['s affidavit requirement] because the action was based on respondeat superior and negligent hiring, not medical or dental malpractice." While this assertion

is correct, *McQuade* interpreted NRS 41A.071, which, as noted above, only applied to "an action for medical malpractice or dental malpractice," not professional negligence, prior to 2015. *See* 2015 Nev. Stat., ch. 439, § 6, at 2527. Here, on the other hand, NRS 41A.035 (2004) applied to actions "based upon professional negligence," which, as articulated in *Tam*, 131 Nev., Adv. Op. 80, 358 P.3d at 242, is broader than and encompasses medical malpractice.

Based on the complex factual inquiry in each case-by-case claim of whether negligent hiring, training, and supervision amounts to professional negligence, it is no surprise that courts have split on whether such claims are independent of medical malpractice or professional negligence. *Compare James v. Kelly Trucking Co.*, 661 S.E.2d 329, 331 (S.C. 2008) (noting that an "employer's liability under [a negligent hiring, training, and supervision] theory does not rest on the negligence of another, but on the employer's own negligence"), *with Blackwell v. Goodwin*, 513 S.E.2d 542, 545-46 (Ga. Ct. App. 1999) (determining that the statute of repose for medical malpractice claims applies to plaintiff's claims against the nurse's employer for negligent hiring, retention, supervision, and entrustment because the claims arose out of the nurse's administration of an injection, which involved the exercise of her professional skill and judgment).

A case-by-case analysis of whether claims asserted by a plaintiff are grounded in professional negligence will avoid a rule of pleading and ensure a rule of substance. Thus, the threshold issue is whether Barnes' negligent hiring, training, and supervision claim is truly an independent tort or whether it is related and interdependent on the underlying negligence of Zhang.

Although in the context of an insurance coverage dispute, some courts have held that claims of negligent hiring, training, and supervision that are inherently interdependent on and an intricate part of the negligent rendering of professional medical treatment are subject to the "professional services exclusion," just like medical malpractice. *See Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Tex.*, 875 S.W.2d 788, 791 (Tex. Ct. App. 1994). For example, in *Duncanville*, an insurance company for a professional medical corporation sought a declaratory judgment that it did not have a duty to defend under its policy after the medical corporation's radiological technicians administered too much sedative to a 4-year old girl, leading to her ultimate death. *Id.* at 790. The insurance policy contained what is known as a "professional services exclusion," "providing that coverage does not apply to bodily injury 'due to the rendering or failure to render any professional service.'" *Id.* The plaintiffs argued that the professional services exclusion did not apply to their claim of negligent hiring, training, and supervision. *Id.* at 791. The Texas Court of Appeals rejected that argument:

> There would have been no injury in this case and no basis for the [plaintiffs'] lawsuit without the negligent rendering of professional medical treatment. Stated more specifically, Erica's death could not have resulted from the negligent hiring, training, and supervision or from the negligent failure to institute adequate policies and procedures without the negligent rendering of professional medical services. The negligent acts and omissions were not independent and mutually exclusive; rather, they were related and interdependent. Therefore, the professional services exclusion operated to exclude coverage not only for the claims of negligence in rendering the professional services but also for the related

allegations of negligent hiring, training, and supervision . . . .

*Id.* at 791-92.

When negligent hiring claims are inextricably linked to the underlying professional negligence, courts have held that the negligent hiring claim is more akin to vicarious liability than an independent tort. *See Am. Registry of Pathology v. Ohio Cas. Ins. Co.*, 461 F. Supp. 2d 61, 70 (D.D.C. 2006) ("Even though the complaints allege that [the American Registry of Pathology] was negligent in hiring Ms. Stevens, [a cytotechnologist,] the injuries in question were caused by—*i.e.* 'arose out of'—Ms. Steven's failure to perform the cytopathology tests properly. In that sense, the negligent hiring claims are similar to the vicarious liability claims because they seek to hold the employer responsible for the negligent acts of the employee."); *Holmes Reg'l Med. Ctr., Inc. v. Dumigan*, 151 So. 3d 1282, 1285 (Fla. Dist. Ct. App. 2014) (citing *Martinez v. Lifemark Hosp. of Fla., Inc.*, 608 So. 2d 855, 856-57 (Fla. Dist. Ct. App. 1992) for the proposition that "the case should be handled under the [Florida Medical Malpractice Act] because plaintiff's asserted claims of negligent hiring and retention, fraud and misrepresentation, and intentional tort were necessarily and inextricably connected to negligent medical treatment").

In cases such as this, when a negligent hiring, training, and supervision claim is based upon the underlying negligent medical treatment, the liability is coextensive. Negligent hiring, training, and supervision claims cannot be used as a channel to allege professional negligence against a provider of health care to avoid the statutory caps on such actions. While a case-by-case approach is necessary because of the inherent factual inquiry relevant to each claim, it is clear to us, in this

case, that the allegations against NSCC were rooted in Zhang's professional negligence. Thus, Barnes' negligent hiring, training, and supervision claim is subject to the statutory caps under NRS 41A.035. And, in light of this court's holding in *Tam*, under NRS 41A.035 (2004), Barnes is only entitled to receive a total of $350,000 for noneconomic damages "per incident, regardless of how many plaintiffs, defendants, or claims are involved." 131 Nev., Adv. Op. 80, 358 P.3d at 240.

E.

Our holding that NSCC is a provider of health care and therefore entitled to have its liability for noneconomic damages capped at $350,000 requires remand to the district court for recalculation of the judgment as to NSCC. To the extent that, as a provider of health care being held liable for professional negligence, NSCC is severally liable, it does not appear to be entitled to a settlement offset. *See* NRS 41A.045 (stating that providers of health care will only be liable severally, not jointly); *Piroozi v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 100, 363 P.3d 1168, 1172 n.4 (2015) ("[B]ecause the petitioners are only severally liable for their portion of the apportioned negligence damages, they are not entitled to an offset."); *see also* Appellants' Opening Brief, p. 36, note 4 ("Defendants recognize that the District Court's failure to offset the settlement against Dr. Zhang's liability is harmless error so long as his liability is capped under NRS 41A.035 . . . ."). As between Zhang and NSCC, the apportionment of liability is unclear. The verdict form refers "Dr. Zhang" and "All Others," without specifically apportioning NSCC's liability, yet, as a defendant held liable on a theory of negligent hiring for the same injury Zhang caused, including the capped $350,000 in noneconomic damages, NSCC's liability appears vicarious. As this issue

was not adequately briefed or developed, it is inappropriate to address it for the first time on appeal.

In remanding, we decline to disturb the district court's collateral source offset for the portion of Barnes' medical bills forgiven by Southern Hills Hospital. *See* NRS 42.021(1). Barnes' challenge on cross-appeal to the district court's offset of $84,813.80 under NRS 42.021 was limited to the sufficiency of evidence presented. Barnes argued that the district court erred by relying solely on an interrogatory answer. This was not the only evidence presented to the district court, however, as Zhang and NSCC attached to their NRCP 59(e) motion a hospital bill showing the amount the district court credited. Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.[5]

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

---

[5]The Honorable Ron Parraguirre, Chief Justice, did not participate in the decision of this matter.

cc:   Hon. James M. Bixler, District Judge
Lansford W. Levitt, Settlement Judge
Maupin Naylor Braster
Lewis Brisbois Bisgaard & Smith, LLP/Las Vegas
David N. Frederick
Kravitz, Schnitzer & Johnson, Chtd.
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A